Leeper v. Bates.

---

## LEEPER *et al.*, *Appellants*, v. BATES.

1. **Equity Practice.** If in a suit in equity the complainant fails to make a case on the evidence, the chancellor may at once and without hearing any evidence, on defendant's behalf dismiss the bill.

2. **Semble** that a demurrer to the evidence can be interposed to the plaintiff's evidence in an equity case as well as in an action at law.

3. **The Demurrer** to the evidence in this action, which was one to set aside a deed for being in fraud of creditors, *held*, improperly sustained, because under the pleadings and the evidence, the defendant should have been required to furnish some proof of the honesty and good faith of the conveyance to him.

*Appeal from Wayne Circuit Court.*—HON. R. P. OWEN. Judge.

REVERSED.

*Smith & Krauthoff* and *C. D. Yancey* for appellants.

(1) If a demurrer to the evidence is proper in a suit in equity, it must be tested by the same rule as in an action at law. See *Buesching v. Gas Light Co.*, 73 Mo. 219, as to this rule. (2) The evidence clearly shows an intention on the part of George Bates to defraud the creditors of Bates & Buehler. (3) The defendant and his

grantor were brothers, and transactions between them are subject to a more jealous scrutiny than if they had occurred between strangers. (4) It was the duty of defendant to make strict and full proof of the consideration for and the fairness of the transaction. *Leavitt v. Laforce*, 71 Mo. 353. The presumption is always against the party who fails to make the explanation. *Cass Co. v. Green*, 66 Mo. 498; *Baldwin v. Whitcomb*, 71 Mo. 651; *Mabary v. McClurg*, 74 Mo. 575. (5) As the case stood, there was no evidence of a consideration paid by the defendant, and it must be taken as though the deed had been shown a voluntary one. This being true, and the grantor having been at the time of its execution insolvent (*Potter v. McDowell*, 31 Mo. 62, 73; *Eddy v. Baldwin*, 32 Mo. 369, 374), it is void as to creditors, without regard to whether there was any actual fraudulent intent on his part, or whether the grantee knew of it or not. *Patten v. Casey*, 57 Mo. 118; *Pawley v. Vogel*, 42 Mo. 291, 302; *Potter v. McDowell*, 31 Mo. 62, 69; *White v. McPheeters*, 75 Mo. 286, 294.

*J. W. Emerson* for respondent.

(1) The finding of the lower court is in accordance with the evidence. (2) Debtors can prefer one creditor to another. *Carson v. Murray*, 15 Mo. 381; *Shelby v. Boothe*, 73 Mo. 74. Nor can fraud be inferred from the mere fact that George Bates was largely in debt at the time of the sales. *State ex rel. Pierce v. Merrill*, 70 Mo. 284; *Dougherty v. Cooper*, 77 Mo. 527. (3) Fraud must be proved; it cannot be presumed. *Sibley v. Hood*, 3 Mo. 290; *Byrne v. Becker*, 42 Mo. 264; *Little v. Eddy*, 14 Mo. 160; *Dallon v. Renshaw*, 26 Mo. 533; *Rumbolds v. Parr*, 51 Mo. 592. (4) The declarations of George A. Bates were incompetent. No grantor or assignor can by his declarations, even in relation to the specific transaction, affect the rights of his grantee or assignee. 1 Greenleaf on Evidence, 180; 10 Mo. 174; 47 Mo. 293; 39 Mo. 98.

DEARMOND, C. — Bates & Buehler ( Geo. Bates and R. E. Buehler), merchants at Mill Spring, Wayne county, became indebted to A. F. Shapleigh & Company and to R. L. Wilkinson, and to others.   Upon the dissolution of the firm, so Bates claimed, Buehler assumed and agreed to pay those debts ; but Buehler afterward went through bankruptcy, leaving the debts unpaid.   "Bates & Bro." and "Bates & Co.," two names for the firm composed of the brothers, George and Samuel A. Bates, succeeded Bates & Buehler.   This firm and George Bates individually, became largely indebted.   George had the management of the business, and Samuel, who was a doctor, was off at a medical school.   George telegraphed to Samuel to return home immediately, which Samuel did, and on January 2, 1875, George transferred to him the store and book accounts and notes and some other property, the consideration being that Samuel should pay the debts of Bates & Bro. and Bates & Co., estimated at $4,664.36. In August, 1875, George executed to Samuel a warranty deed to certain real estate for a consideration, as specified in the deed, of nine hundred dollars.   Prior to this, in February, 1875, suits were begun in the Wayne circuit court upon the Shapleigh & Company and the Wilkinson demands.   Judgments were rendered in these suits in April, 1876.   Upon these judgments, which were against George Bates and R. E. Buehler, executions issued ; the real estate conveyed by George to Samuel Bates in August, 1875, was levied on, and in October, 1876, sold ; plaintiffs were the purchasers and received a sheriff's deed therefor.   This action was brought to set aside the warranty deed to Samuel A. Bates, as being voluntary and made and accepted to defraud the creditors of Geo. Bates.

The evidence shows that George Bates dealt largely in lands as well as merchandise.   He was resolved never to pay the debts of Bates & Buehler, claiming that he had once paid them in his settlement with Buehler ; and he so expressed himself to a number of persons.   He

spoke of an intention to put his property out of his hands to avoid their payment, at the same time saying he meant to pay all his own honest debts. He talked of selling his property to pay his own debts. Before the sheriff's sale, an execution issued on another judgment against George Bates, had been returned *nulla bona*. No witnesses ever heard Samuel A. Bates say anything about the Buehler debts, and no one could say that Samuel was ever present when George talked about not paying these debts or about shifting his property. In September, 1875, George bought a lot for three hundred dollars from a Mrs. Bowen, paid her for it, and had the deed made to Samuel A. There was no evidence to show whether or not Samuel furnished the money to pay for the lot, or whether he knew of its purchase. There is no evidence of payment or failure to pay the consideration mentioned in the deed which plaintiffs attack as fraudulent. The recitals of the deed give us all the information we have on that subject. Nor is there any showing of the ability or inability of defendant to pay for this property. Defendant and his brother were present at the trial, but neither was called as a witness. At the conclusion of plaintiffs' evidence, which was voluminous, the court trying the cause, at the instance of defendant, sustained a demurrer to the evidence, and dismissed the bill.

Plaintiff appealed.

In equity proceedings, a demurrer to the evidence is, perhaps, novel. But if the petitioner makes no case, the chancellor need not call upon the other side for a showing; he may at once dismiss the bill. And sustaining a demurrer to the evidence may not, under our practice, be an objectionable method of doing this. But this appeal depends upon another question. Under the pleadings and the plaintiffs' evidence, should the defendant have been required to furnish some proof of the honesty and good faith of his purchase? George and Samuel Bates had been intimately associated in business. And, they were brothers. Upon Samuel, at the instance of

his brother, devolved the duty and responsibility of winding up the affairs of the firm. Soon suits were brought on the Buehler debts. To strangers George expressed freely his determination never to pay these debts and his intention to put his property out of the reach of these creditors. How natural that the brother should hear of this. *Leavitt v. LaForce*, 71 Mo. 354. The petition charged *fraud* upon the defendant. His answer was a general denial, but he did not go into the witness box and thence face the accuser. Equity delights in a quick show of clean hands. These brothers alone knew the very heart of the transaction. Plaintiffs could only grope among the circumstances and incidents. "Fraud is rarely ever susceptible of positive proof, for the obvious reason that it does not cry aloud in the streets, nor proclaim its iniquitous purposes from the housetops. Its *vermiculations* are chiefly traceable by covered tracks and studious concealments." *Massey v. Young*, 73 Mo. 273.

Plaintiffs' evidence suggests the propriety of an explanation by the other party, who could tell the whole story. Such a suggestion of unheeded equity will swell into a demand. Then silence becomes pregnant with inferences. *Cass Co. v. Green*, 66 Mo. 512 ; *Baldwin v. Whitcomb*, 71 Mo. 658 ; *Mabary v. McClurg*, 74 Mo. 591. But we would not infer too much against this defendant, for the court thought there was no occasion for his testifying, and that may have been the only reason why he did not take the stand.

The talk of George Bates could not defeat the title of Samuel Bates, but what George said and did is pertinent as tending to show a fraudulent purpose in disposing of his property, and the facts of relationship and association in business may support the inference that Samuel was not ignorant of such purpose.

The court erred in dismissing the bill, and its judgment should be reversed and the cause remanded. Martin, C., not sitting. Ewing, C., concurs. Henry, C. J., absent.