HEALEY *et al.*, *Appellants*, v. SIMPSON, Administrator.

Division Two, December 31, 1892.

1. **Practice:** EQUITY SUIT: DEMURRER TO EVIDENCE. The office of a demurrer to the evidence in an equity case considered.

2. **Contract:** ADOPTION: SPECIFIC PERFORMANCE. While a writing may not operate as a deed of adoption because lacking the legal requirements, still it may operate as a contract for adoption which on proper showing may be specifically enforced.

3. ——: ——: ——: VALUABLE CONSIDERATION. The surrender by the parents of a child of all control over her and her services and companionship constitutes valuable considerations for a promise of adoption.

4. ——: ——. Where the person claimed to have been adopted dies before the adopting parent, her heirs and not her administrators are the proper parties plaintiff .to a suit for the specific performance of the contract against the adopting parents' administrator.

*Appeal from St. Louis City Circuit Court.*—HON. JACOB . KLEIN, Judge.

REVERSED AND REMANDED.

*A. A. Paxson* and *J. S. Laurie* for appellants.

The agreement in question is a contract whereby Brewster, for a valuable consideration (the services and companionship of Eva), obligated himself that Eva should have a child's share in his estate, that is to say, an interest equal to that which a child born in wedlock would inherit from a parent dying intestate; said agreement was valid and binding, and the legal effect thereof was such that Eva's children upon the death of their mother, after performance of her part of the agreement, became entitled to Brewster's estate when he died.

*Wright v. Tinsley*, 30 Mo. 389; *Gupton v. Gupton*, 47 Mo. 40; *Sutton v. Hayden*, 62 Mo. 101; *Sharkey v. McDermott*, 91 Mo. 647; *Davis v. Hendricks*, 99 Mo. 478; *Van Duyne v. Vreeland*, 11 N. J. Eq. 370; *Godine v. Kidd*, 19 N. Y. Supp. 335; *Roberts v. Hall*, 18 Canada L. J. 177; *Hill v. Gomme*, 1 Beav. 540; *Rhodes v. Rhodes*, 3 Sandf. Ch. 279; *Jaffee v. Jacobson*, 48 Fed. Rep. 21; *Reinders v. Koppelmann*, 68 Mo. 482; *In re Clements*, 78 Mo. 352; *Power v. Hafley*, 85 Ky. 671.

*E. S. Robert, W. F. Smith* and *R. M. Nichols* for respondent.

(1) Mrs. Martha McWilliams, divorced wife of Joseph Brewster, was not a competent witness to prove the purported signatures to the paper writing of her then husband, and the deed was not admissible under Revised Statutes, 1889, sections, 2427, 4859, and 4860, as conveyances affecting real estate. Revised Statutes, 1889, sec. 8922; 1 Greenleaf on Evidence, sec. 337; *Lane v. Lane*, 95 N. Y. 501; *Spradling v. Conley*, 51 Mo. 51; *Moore v. Wingate*, 53 Mo. 409; *Holman v. Bachus*, 73 Mo. 51. (2) The paper writing cannot take effect as a deed of adoption. Revised Statutes, 1889, secs. 968, 970; *Sharkey v. McDermott*, 16 Mo. App. 89; *Tyler v. Reynolds*, 53 Iowa, 146; *Shearer v. Weaver*, 56 Iowa, 578; *Reinders v. Koppelmann*, 68 Mo. 499. (3) Both at law and in equity the whole personal estate of appellants' deceased ancestor vested in her executor or administrator, and her heirs cannot maintain an action for the same without the intervention of an administrator, even though they be the sole heirs or distributees to the estate. *Hounsol v. Moore*, 18 Mo. App. 407; *Hastings v. Myers*, 21 Mo. 519. (4) The elements of uncertainty as to the amount of the property to which an heir under such contract as

claimed would be entitled, and the unjust, unfair and inequitable provisions and circumstances of such a contract, as against the widow and the collateral heirs of deceased, would preclude a court of equity from enforcing the same.   Pomeroy's Equity Jurisprudence, sec. 1405; *Woods v. Evans*, 113 Ill. 187; *Wallace v. Rappeleye*, 103 Ill. 240; *Grayham v. Grayham*, 34 Pa. St. 474; *Pollock v. Ray*, 85 Pa. St. 428.   (5) If Brewster agreed that plaintiff's mother should inherit his property, in consideration of which she rendered him valuable services, is not a breach of this contract redressable in an action at law?   It was a mere personal contract, and only personal property was involved.   A court of equity would have no jurisdiction under the circumstances.   Pomeroy's Equity Jurisprudence, sec. 1405; *Wallace v. Long*, 105 Ind. 522; Revised Statutes, 1889, sec. 2131; *Schwab v. Pierre*, 43 Minn. 520; *Grayham v. Grayham*, 34 Pa. St. 475.

THOMAS, J.—This is a suit in equity by the children of Evangeline Healy, *nee* Pharis, now deceased, for the specific performance of an agreement alleged to have been executed by Caroline Pharis and Joseph Brewster and wife, which is as follows:

"This indenture, made and entered into this twenty-eighth day of September, A. D. 1857, by and between Caroline Pharis, of Cheviot, in the county of Harrison, in the state of Ohio, party of the first part, and Joseph Brewster and Martha Brewster, of the same place, party of the second part, witnesseth:   That said party of the first part, for and in consideration of the covenants and agreements hereinafter named, hereby voluntarily consents and agrees that said Joseph and Martha Brewster may have the custody and absolute control of her infant daughter, Evangeline

Pharis, until she arrive at the age of eighteen years; that they shall have the right to govern said child as though they were her natural parents; and said party of the first part hereby relinquishes any and all claims she might have, as mother of said child, to her labor or the fruits thereof.

"And said Joseph and Martha Brewster in consideration of the foregoing agreement hereby adopt said Evangeline Pharis as their own child, to be known as Evangeline Brewster from this time henceforth; that they will govern, educate, maintain and in all respects treat said child as though she were their own natural offspring; and it is further agreed that said Evangeline Brewster shall have and inherit from the estate of said parties of the second part in the same manner and to the same extent that a child born of their union would inherit.

"It is expressly understood by the parties hereto that nothing herein contained shall be construed to prevent said party of the first part from visiting said child at all proper times and under proper regulations.

"CAROLINE PHARIS,    [Seal]
"JOSEPH BREWSTER,    [Seal]
"MARTHA BREWSTER. [Seal]"
"Witness:
"THOMAS RUST,
"SARAH RUST."

Plaintiffs who are minors and who sue by curator aver: "That in pursuance of said agreement said mother of Evangeline then and there surrendered the care, custody and control of said infant Evangeline to said Joseph Brewster and he took her and placed her in his household as his child and continued to care for, support, maintain and recognize her as his child up to the time of her death; that said Evangeline from the date of said agreement up to the time of her death

yielded a willing obedience to the said Joseph Brewster, and during all of said time said Evangeline did and performed the household duties of said Brewster and continued to live with said Brewster, discharging for him all of the duties commonly discharged by a child for its parent and giving him the affection due from a child to a parent.''

It is further averred that said Evangeline married and had three children, the plaintiffs; that she died in 1883; that Joseph Brewster, having been divorced from his wife Martha, re-married, and upon his death in 1886 left a widow, Prucenia Brewster, but no lineal descendants.

Brewster's estate consisted of personalty only, and his administrator, his widow, and collateral kindred were made defendants. Plaintiffs prayed for a decree ''establishing their rights as aforesaid, under contract and agreement made and entered into as aforesaid, and declaring them to be the heirs at law of said Brewster, and as such entitled to said estate, and that said contract be specifically enforced against said estate and the defendants herein, and for such other and further relief as may seem proper.'' Defendants answered, denying the allegations of the petition and charging that the alleged written agreement was a forgery. They also set up the judgment of the probate court of the city of St. Louis adjudging the estate to the widow and collateral heirs to the exclusion of these plaintiffs who appeared there and set up their claim under said agreement, from which judgment plaintiffs appealed to the circuit court of said city, where their appeal was then pending.

The evidence tended to prove the allegations of the petition. It also appeared that Brewster and his wife were childless, and were well off financially; that Mrs. Brewster and Evangeline's mother were sisters,

the latter being a widow and poor.  At the close of plaintiffs' case the court sustained a demurrer to the evidence, rendered judgment for defendants and plaintiffs have appealed.

I.  It is difficult to perceive what office a demurrer to the evidence in an equity case performs.  Commissioner DeArmond, in *Leeper v. Bates*, 85 Mo. 224, said that in such a case "a demurrer to the evidence is perhaps novel.  But if the petitioner makes no case the chancellor need not call upon the other side for a showing; he may at once dismiss the bill."  But the court there held that the demurrer to the evidence was improperly sustained, because plaintiff made out a *prima facie case.*  In *Cox v. Cox*, 91 Mo. 71, an issue of fact in an equity case was submitted to the jury, and the court finally directed the jury to return a verdict for the defendant, and Judge RAY, speaking for this court, held that plaintiff was not prejudiced by this, saying:  "Virtually this was a finding to the same effect by the chancellor of his own motion, and such as he was authorized to make," *non obstante veredicto.*

In actions at law the demurrer to the evidence concedes every fact which the evidence tends to prove, and every inference fairly deducible from the facts proved, and we see no reason why it should not perform the same office in an equitable proceeding.  When the chancellor decides a case upon its merits, we defer somewhat to his finding and judgment, but what is his finding when he sustains a demurrer to the evidence?  Manifestly there is no finding.  He simply declares that the evidence *does not tend* to prove the issues tendered, neither directly nor inferentially.  In this case then, in the determination of the question whether the demurrer to the evidence was properly sustained, we must concede every fact which the evidence tends to prove, and every fair inference which may be drawn

from the facts proved, and when we do this we must say that the court erred.

The court admitted in evidence the contract of adoption before its execution was established, but plaintiffs introduced evidence tending to prove that the parties did execute it—that the said Evangeline when four or five years old went to live with Brewster in 1857 and continued at his home in Illinois till 1866, and took his name, and after that time and before her marriage she had lived with her mother by Brewster's consent, he aiding her pecuniarily. Conceding the execution of the contract, and that the mother and child substantially complied with its terms on their part, which we must do on a demurrer to the evidence, did plaintiffs make out a *prima facie* case, which called for evidence on the part of defendants? We answer that we think they did. The instrument of writing in question cannot operate as an adoption, as it did not come up to legal requirements, but it can operate as a contract for adoption, which may, upon a proper showing, be specifically enforced in equity. *Wright v. Tinsley*, 30 Mo. 389; *Gupton v. Gupton*, 47 Mo. 40; *Sutton v. Hayden*, 62 Mo. 101; *Sharkey v. McDermott*, 91 Mo. 647; *Davis v. Hendricks*, 99 Mo. 478; *Van Duyne v. Vreeland*, 11 N. J. Eq. 370; *Van Duyne v. Vreeland*, 12 N. J. Eq. 142; *Godine v. Kidd*, 19 N. Y. Sup. 335; *Roberts v. Hall*, 18 Canada L. J. 177, 328; *Hill v. Gomme*, 1 Beav. 540; *Rhodes v. Rhodes*, 3 Sandf. Ch. 279; *Jaffee v. Jacobson*, 48 Fed. Rep. 21; *Reinders v. Koppelmann*, 68 Mo. 482; *In re Clements*, 78 Mo. 352; *Power v. Hafley*, 85 Ky. 671.

The surrender by the mother of all control of the child, and the services and companionship of the latter constituted valuable considerations for the promise of Brewster and his wife, that she should "have and inherit from the estate of said parties    *    *    *    in the

same manner and to the same extent that a child born of their union would inherit." The influences of a child of tender years in the home circle are too sacred and holy to be estimated in dollars and cents. And, when the mother sent her child to dwell in another family in a distant state, she yielded much of affection and love, and Brewster by the same act gained the companionship of one who added much no doubt to his enjoyment of life. The sundering of natural ties and the formation of artificial ones for the enjoyment and gratification of the party at whose instance this is done, is held and ought to be held to be such a consideration as the courts will recognize as valuable where the other party has in good faith acted on and carried out the agreement on his part. This is upon the principle that the parties cannot be put *in statu quo*. In the very nature of things nine years in the life of a child so change conditions that it is out of the power of an earthly tribunal to restore the parties to their original situation and environment, and the courts therefore compel them to stand upon and abide by the record they have made.

In *Sharkey v. McDermott, supra*, it appeared "that a man and wife entered into an agreement to adopt plaintiff as their child, and leave her their property at their death, but failed to execute the agreement as to the adoption. Plaintiff wholly performed the agreement on her part by living with them and paying them all the attention due from a child to parents for many years. The husband died, leaving the property to his wife. Plaintiff continued to live with the wife, as before, until the latter died, intestate." And it was held "that the contract was a valid one, and that plaintiff was entitled to its specific performance as to the disposition of the property, she having the paramount claim of a creditor, or equitable owner, in

consideration of her services.'' The opinion further says: ''This agreement was not merely and solely one to adopt the plaintiff, but was in part to leave the plaintiff the property at their death. The fact that the parties, and each of them, may have failed and neglected to execute it, so far as the adoption was concerned, should not, we think, exonerate them from its further obligation to transfer their property, when they could no longer use it, to plaintiff, but, if the plaintiff is without the *status* of an adopted child, through no fault of her own, but through the neglect of those so promising, this is only additional ground for the enforcement of the contract as to the disposition of the property.'' That case is decisive of this.

We desire to add at this point that what is here said is upon the assumption of the genuineness of the written contract in question, as to which we express no opinion.

II. The point defendants make, that the administrator of said Evangeline's estate, and not her heirs, should have sued, is not well taken. Evangeline, having died before Brewster, had no interest in his estate, that did or could pass to the administrator. Her children however succeeded to her rights under the contract and they are the proper parties to the bill for its specific performance. The judgment will be reversed and the cause remanded for a new trial. All concur.