MARY HORTON et al., Respondents, v. HARRY
    TROLL, Public Administrator, in charge of Estate
    of ELIZABETH C. DUNHAM, Deceased, et al.,
    Appellants.

St. Louis Court of Appeals.   Argued and Submitted May 7, 1914.
                    Opinion Filed June 2, 1914.

1. MARRIED WOMEN: Ratification of Contract: Adoption.   A
   married woman may ratify an adoption of a child made by her
   before the passage of Sec. 8304, R. S. 1909, authorizing a married
   woman to contract as a *femme sole*.

2. ———: ———.   Ratification by a married woman, after the
   removal of the disability of coverture, is valid.

3. ADOPTION: Parol Adoption: Sufficiency of Evidence.   In an
   action to establish the parol adoption of children, evidence *held*
   sufficient to establish the fact of such adoption by acts estopping
   the adoptive parents and those claiming under them from dis-
   puting it, so as to entitle plaintiffs to take as heirs of one of
   the adoptive parents, who died intestate.

4. ———: ———.   The adoption of a child may be established
   by acts and conduct, where no legal deed of adoption has been
   executed and recorded in due form of law.

5. ———: Rights of Adopted Children: Wills.   One who adopts
   children without contracting to leave anything to them may, by
   will, dispose of the bulk of his estate to others, provided he
   named them in his will as children and thereby disclosed that
   he had them in mind when he disposed of his estate.

6. ———: ———.   Where a husband and wife adopted children,
   and the husband died, naming the children in his will and
   leaving the bulk of his property to his wife, who subsequently
   died intestate, the adopted children took as her heirs.

7. ———: ———: Laches: Statute of Limitations.   Where a
   husband and wife adopted children, and the husband died, nam-
   ing the children in his will and leaving the bulk of his property
   to his wife, who subsequently died intestate, the adopted children
   had no rights as heirs until the death of the wife, and an action
   brought two years and four months after her death was not
   barred by laches nor the five or ten-year Statute of Limita-
   tions.

8. ———: ———: ———: ———. Where a husband and wife adopted children, by acts and conduct constituting a parol adoption, and the husband died, naming the children in his will and leaving the bulk of his property to his wife, who subsequently died intestate, the natural father could not maintain an action on behalf of the children to enforce their rights prior to the death of the wife, since their right did not accrue until the wife died, and prior to that time it could not be determined whether the adoption had been repudiated or recognized.

9. ———: ———: Enforcement of Rights: Jurisdiction of Circuit Court. The circuit court has jurisdiction of a suit in equity to establish a parol adoption of children, pending administration in the probate court of the estate of the decedent alleged to have adopted them.

10. JURISDICTION: Waiver. The lack of jurisdiction of a court over the subject-matter cannot be waived.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*T. K. Skinker* and *Henderson, Marshall & Becker* for appellants.

(1) The court erred in refusing to dismiss the plaintiffs' suit because it was not lawful for Mrs. Dunham to adopt the plaintiffs, even by deed, since her husband was a non-resident of Missouri; it follows that she could not bind herself by verbal contract to adopt. Gen. Stat. 1865, p. 478, secs. 1 and 2; R. S. 1909, secs. 1671-1672. (2) The court erred in refusing to dismiss the plaintiffs' suit because, even if Mrs. Dunham made the alleged contract, it was void, since she was a married woman and did not pursue the statutes, the only method by which a married woman could, in 1876, in any case, adopt a child. Asbury v. Hicklin, 181 Mo. 658; Teats v. Flanders, 118 Mo. 660; Sharkey v. McDermott, 91 Mo. 647; R. S. 1889, sec. 6864; Gen. Stat. 1865, p. 466, secs. 1, 2; Cahoe v.

Enders, 68 Mo. 224; Tatum v. St. Louis, 125 Mo. 647; Bartlett v. O'Donoghue, 72 Mo. 563; Huff v. Price, 50 Mo. 228; Sutton v. Casseleggi, 77 Mo. 397; O'Reilly v. Kluender, 193 Mo. 576; Ruesh v. Brown, 101 Mo. 586; Gwin v. Smurr, 101 Mo. 552; Sarazin v. Railroad, 153 Mo. 479; Evans v. Morris, 234 Mo. 177; Rosenwald v. Middlebrook, 188 Mo. 58; Price v. Hart, 29 Mo. 171. (3) The court erred in refusing to dismiss the plaintiffs' suit because the evidence does not show that Mrs. Dunham promised to adopt the Hudson children. Thomas v. Maloney, 142 Mo. App. 193; Lynn v. Hockaday, 162 Mo. 125; Asbury v. Hicklin, 181 Mo. 658; Teats v. Flanders, 118 Mo. 660; Peter v. Bauer, 83 Neb. 405; Walker v. Bohannon, 243 Mo. 119; Williams v. Keef, 241 Mo. 366. (4) The court erred in refusing to dismiss the plaintiffs' suit because it is barred by limitations. Healey v. Simpson, 113 Mo. 340; Gray v. Givens, 26 Mo. 291, 300; Dunnica v. Sharp, 7 Mo. 71; Schade v. Gehner, 133 Mo. 252; Gross v. Keirski, 41 Cal. 111; Sharkey v. McDermott, 91 Mo. 647. (5) The court erred in refusing to dismiss the plaintiffs' suit because the plaintiffs were guilty of laches. McKee v. Downing, 224 Mo. 115, 144; Dexter v. MacDonald, 196 Mo. 373; Burdett v. May, 100 Mo. 13; Lea v. Polk, 21 How. 494; State v. West, 68 Mo. 229; Lenox v. Harrison, 88 Mo. 491; 25 Cyc., p. 1074; Morris v. Parry, 110 Mo. App. 675.

*Muench, Walther & Muench* for respondents.

(1) Oral adoptions are very generally enforced in this State and elsewhere on the theory that they are valid contracts which, having been fully performed on one side, will be enforced against the estate and the heirs of the adopting parents on the other, equity treating that which should have been done to make the adoption regular in law as having, in fact, been done, in order to avoid a palpable injustice to the

adopted children.    Thomas v. Maloney, 142 Mo. App.
193; Novack v. Berger, 133 Mo. 24; Healey v. Simpson,
113 Mo. 340; Lynn v. Hockaday, 162 Mo. 111; Hocka-
day v. Lynn, 200 Mo. 464; Sharkey v. McDermott, 91
Mo. 647; Chehack v. Battles, 8 L. R. A. 1130; Van
Tyne v. Van Tyne, 1 L. R. A. 155; Wales v. Holden,
209 Mo. 552; Sarazin v. Railroad, 153 Mo. 486.    (2)
The surrender by the father of all control over the
respondents, and the receipt by Doctor and Mrs.
Dunham of their services, companionship and filial
affection constituted valuable considerations for the
agreement to adopt.    Cases cited under Point I.    (3)
By surrendering his daughters and by their remaining
with the foster parents until their majority, the con-
tract was fully performed on the part of the father and
the children and the contract was taken out of the
provisions of the statute requiring a formal deed.
Cases cited under Point I.    (4)    Adopted children
become and are, for all the purposes of inheriting from
the adopting parents, the lawful children of such
adopting parents.    Gen. Stat. 1865, p. 478, sec. 3;
R. S. 1909, sec. 1673; Moran v. Stewart, 122 Mo. 295;
Moran v. Stewart, 132 Mo. 73; Hockaday v. Lynn, 200
Mo. 464; Thomas v. Maloney, 142 Mo. App. 198;
Fosburgh v. Rogers, 114 Mo. 133; Westerman v.
Schmidt, 80 Mo. App. 348; Bray v. Miles, 23 Ind. App.
432.    (5)    The language of section 1671, R. S. 1909,
and the corresponding sections in earlier statutes to
the effect that "if any person in this State shall desire
to adopt any child, etc.," cannot be construed to mean
that the benefits of the act shall be confined to legal
residents of the State.    It is sufficient if the adopting
parent has a place of residence here.    R. S. 1909,
sec. 1671; Gen. Stat. 1865, p. 478, sec. 1.    Even if
this should be held to be true, however, the evidence
fails to show that Doctor Dunham ever went to Florida
with the intent to change his domicile, which is one
of the two elements essential to effect a change of the

legal residence which he was shown to have established
in St. Louis prior to the adoption.  State ex rel. v.
Shepherd, 218 Mo. 656; Humphrey v. Humphrey, 115
Mo. App. 361; Hall v. Schoenecke, 128 Mo. 661;
Stevens v. Larwill, 110 Mo. App. 140; Hamill v. Talbot,
81 Mo. App. 215; Newton v. Commissioners, 100
U. S. 548;    (6)   Since a married woman, in 1876, had
the right to enter into a joint adoption agreement in
writing with her husband, by joining in the deed of
adoption, and since equity, in enforcing an oral agree-
ment for adoption, where performance on one side is
shown, will treat that as having been done which should
have been done, the court, in determining the rights of
adopted children, where a joint oral contract is shown,
will presume the execution of a deed joined in by both
adoptive parents and binding on the estates of both.
Thomas v. Maloney, supra; Healey v. Simpson, supra;
Lynn v. Hockaday, supra; Sarazin v. Railroad, surpa.
(7)   Mrs. Dunham's connection with the original
adoption agreement having been shown, her later
statements that there had been no legal adoption are
mere self-serving declarations and incompetent to
disprove the adoption on her part.   Lynn v. Hockaday,
162 Mo. 120.   (8)   As courts will not lend their aid
merely to the establishment of a social *status*, un-
connected with a material benefit, a cause of action of
which a court could take cognizance arose in favor of
respondents only upon the death of Mrs. Dunham, to
enforce against her estate the rights growing out of
their *status* as children as established and continuing
until her death, by virtue of the adoption; consequenty
this suit, brought in due time after Mrs. Dunham's
death, is neither barred by limitation nor stale in equity
by reason of laches on the respondents' part.     Cases
cited under Point I; Beach v. Ryan, 155 Mo. App. 49;
State v. Odd Fellows, 8 Mo. App. 153; Froehlich v.
Musicians' Mutual Benef. Assn., 93 Mo. App. 390.

REYNOLDS, P. J.—The plaintiffs instituted this suit in equity on December 21, 1909, in the circuit court of the city of St. Louis, setting up in their petition that they were the only children of one Thomas Hudson, formerly a resident of that city; that in the year 1876, Lavinus Dunham and Elizabeth Dunham, his wife, having no children of their own, entered into an agreement and contract with Thomas Hudson, the father of plaintiffs, that he should surrender the custody and care of plaintiffs, his four daughters, aged at that time respectively, seven, ten, eleven and twelve years, to Lavinus and Elizabeth C. Dunham, and permit them to adopt plaintiffs as their children, and that the Dunhams should adopt plaintiffs as their own children and legal heirs; that this agreement was fully performed by Thomas Hudson, the father, by his immediately surrendering to the Dunhams the care, custody and control of plaintiffs, his minor children; that the agreement was fully performed by plaintiffs on their part, in that they immediately went to live in the household of the Dunhams and remained in the household until they respectively became of age or self-supporting; that they took the name of their adopted parents as their own surname and continued to bear it until after they had become of age and self-supporting, when they resumed the name of Hudson with the approval of the Dunhams; that they addressed the Dunhams as father and mother, respectively, and rendered to them the obedience, affection and services, and discharged all of the duties owed and rendered to parents by children. They further aver that the agreement of adoption was performed by the Dunhams in this: That they immediately assumed the care, custody and control of plaintiffs and maintained and exercised the same during the respective minorities of plaintiffs; that they gave the children, plaintiffs here, the name of Dunham, addressed the children and introduced them to their relatives and others as their

daughters, taught them, as children, to regard and address them as father and mother; gave to them the support, care and affection of parents and exacted and received from them the obedience and service of children. It is also averred that the adoption agreement, though fully performed by plaintiffs and their father and partially performed by the Dunhams, was not fully performed in this: That the Dunhams failed and neglected to evidence the adoption by deed duly executed, acknowledged and recorded in the manner prescribed by the statutes of this State. It is further averred that Lavinus Dunham died August 6, 1891, leaving a will, duly probated, by which he bequeathed one dollar to each of the plaintiffs as his adopted daughters, and the residue of his estate to his wife, Elizabeth C. Dunham; that the latter remained a widow and died intestate in the city of St. Louis on August 22, 1907, leaving an estate consisting of personal property of the value of about $26,000; that the defendant Harry Troll, then and now the duly qualified and acting public administrator within and for the city of St. Louis, on September 3, 1907, took charge of the estate of Elizabeth C. Dunham, deceased, and is now the administrator of said estate and as such in possession and control of the property belonging to the estate, which is within the city of St. Louis and within the jurisdiction of the circuit court. It is further averred that Elizabeth C. Dunham died without issue and that the other defendants, outside of the public administrator and defendant Aitken, are the nephews and nieces, respectively, of Lavinus Dunham, the husband of Elizabeth C. Dunham, deceased, and that the defendant Aitken claims to be a cousin of Elizabeth C. Dunham, and that excepting plaintiffs, these defendants, exclusive of the public administrator, are the next of kin to Elizabeth C. Dunham and the only persons who would be entitled to share in her estate. Averring that they have no adequate remedy

at law for the performance and enforcement of the contract and agreement of adoption, or for the protection of their rights as the adopted children of Elizabeth C. Dunham in the assets of her estate, plaintiffs pray the court by its decree specifically to enforce the contract of adoption and declare and establish plaintiffs as the children and lawful heirs of Elizabeth C. Dunham, and as such entitled to the assets of her estate upon distribution and for such other and further relief as to the court may seem meet and just.

Defendant Troll, as public administrator, admitting that he is in charge of the estate as such, avers that the estate is in process of administration by him as such public administrator under the direction of the probate court of the city of St. Louis; that no final settlement thereof has been made by him; that at the time of filing the answer and until after final settlement has been made, he is not liable or subject to the action of plaintiffs herein for distribution of the assets thereof, and is at all times liable and subject only to the orders and judgment of the probate court of the city of St. Louis, in the exercise of its provisional jurisdiction in respect to the jurisdiction and distribution of the property of the estate held by him as administrator. Denying all knowledge or information on which to found a belief as to the averments of the petition, other than those averments alleging him to be in charge of the estate as public administrator, and demanding strict proof thereof, the administrator denies plaintiffs are entitled to the relief asked or to any decree whatever as against him and prays that he may be dismissed with his costs.

Defendant Aitken answered by general denial.

The other defendants, admitting that defendant Troll, as public administrator, is in charge of the estate and now acting as administrator thereof, and that it is now in the course of administration in the probate court, and admitting that plaintiffs were children of

Thomas Hudson, and averring that at the times mentioned Hudson had no wife living and was a man without means and wholly unable to care for or provide for his children, and that they were in destitute circumstances and in need of care, education and support, avers that in the year 1876, the Dunhams, being in comfortable circumstances, out of charity and in order to relieve the wretchedness of plaintiffs, took them to live in their household and for years thereafter, at their own expense, housed, fed, clothed, trained and educated them, but that Elizabeth C. Dunham never adopted plaintiffs or promised or agreed to adopt them as her children. They further aver that plaintiffs, after having lived for about ten years in the household and at the sole expense of the Dunhams, about the year 1886, voluntarily abandoned the home of the Dunhams and resumed their residence with their father, and that for at least twenty-three years before the death of Elizabeth C. Dunham, plaintiffs never lived with her or recognized her as having any right or interest in them or control over them, or any of them, but for that period of time they lived and were as total strangers to Elizabeth C. Dunham. They further aver that the Dunhams and Thomas Hudson are all now long since dead; that few persons who knew them in the year 1876 and during the period antedating 1890 are now living, and in the natural order of things those who survive have little, if any, definite recollection, if they ever knew, of the relations which existed between plaintiffs and defendants' intestate, wherefore defendants say that plaintiffs are guilty of laches in deferring for so long a period of time and until after the death of Elizabeth Dunham, a suit to establish their status as adopted children. They further plead the five and ten-year Statutes of Limitations in bar of the action.

Plaintiffs replied to this answer by a general denial.

The cause was tried before the court and testimony heard. At its conclusion the court found the issues joined in favor of plaintiffs and against the defendants.

After so finding the decree proceeds as follows:

"And the court doth further find that Elizabeth C. Dunham died on the 22d day of August, 1907, while a resident of the city of St. Louis, leaving an estate in said city consisting of personal property, that the defendant Harry Troll, as the duly qualified and acting public administrator within and for said city of St. Louis, on the 3rd day of September, 1907, took charge of said estate and has ever since been and now is administering upon said estate as the administrator thereof, and is in possession and control of all the assets and property in the city of St. Louis belonging to said estate, and that all said assets and property are within the jurisdiction of this court, and are of a value of at least $25,000.

"That Lavinus Dunham, the husband of said Elizabeth C. Dunham, died in the city of St. Louis on or about the 6th day of August, 1891, leaving a last will and testament wherein and whereby he undertook to leave to said Elizabeth C. Dunham, his wife, all his property with the exception of legacies of one dollar each to the plaintiffs, as his adopted daughters.

"That neither said Lavinus Dunham, at the time of his death, nor said Elizabeth C. Dunham, at the time of her death, left any issue, and that defendants Madeleine J. Besett, Louis T. Dunham, Solon C. Dunham, Edward C. Dunham, Ida D. Blackwell, Mary C. Dunham, Alice C. Dunham Hannay, herein sued as Alice C. Dunham, Ralph W. Dunham, Egbert H. Dunham, Cornelius L. Dunham, Frank Dunham and Stephen A. Dunham claim title to the estate of said Elizabeth C. Dunham as nephews and nieces, respectively, of said Lavinus Dunham, and the defendant Robert Walter Aitken, as a cousin of said Elizabeth C. Dunham.

"The court doth further find that no children were ever born to said Elizabeth C. Dunham and her husband, Lavinus Dunham, or either of them; that the plaintiffs were the children of one Thomas Hudson, now·deceased, who formerly resided in the city of St. Louis; that, some time during the year 1876, after the death of plaintiffs' mother, the said Elizabeth C. Dunham and her said husband, Lavinus Dunham, both at the time residents of the city of St. Louis, entered into a contract with said Thomas Hudson, whereby he agreed to surrender to said Elizabeth C. and Lavinus Dunham the care and custody of his said four children the plaintiffs herein, upon condition that said Elizabeth C. Dunham and Lavinus Dunham would adopt them and raise them as their own children and legal heirs; that at the time of said contract, the plaintiff Mary was about twelve, the plaintiff Jessie about eleven, the plaintiff Elizabeth about ten and the plaintiff Agnes about seven years of age; that, immediately after making said contract and in pursuance thereof, the said Thomas Hudson did surrender to said Elizabeth C. and Lavinus Dunham the care, custody and control of his said four children, the plaintiffs, and the plaintiffs were immediately taken by the said Elizabeth C. and Lavinus Dunham into their household and remained there until they respectively became of age and self-supporting; that they were also, immediately upon being so taken into the household of said Elizabeth C. and Lavinus Dunham, addressed by them and introduced to others by the name of Dunham, and themselves adopted and continued to be addressed by and to bear said name until after they had respectively become of age and self-supporting; that they addressed said Elizabeth C. and Lavinus Dunham as 'mama' and 'papa' and were, in turn, addressed by them as their adopted children, and, during all the time they lived with said Elizabeth C. and Lavinus Dunham, were

introduced and spoken of by them to other persons generally as adopted children.

"That the said contract of adoption entered into between the said Thomas Hudson and the said Elizabeth C. and Lavinus Dunham was fully performéd by said Thomas Hudson by immediately surrendering the full care and custody of his said four children to said Dunhams, and thereafter exercising no further control over them; that it was performed by the said Elizabeth C. and Lavinus Dunham by immediately assuming the care, custody and control of the plaintiffs, and thereafter, until they respectively became of age and self-supporting, retaining and exercising such care, custody and control over them and furnishing them such education, maintenance and support and bestowing upon them such attention, care and affection as are usually bestowed upon children by their parents, and that it was fully performed by the plaintiffs by immediately entering the household and becoming members of the family of said Elizabeth C. and Lavinus Dunham, and from that time until they respectively became of age and self-supporting, rendering to them such obedience and services and bestowing upon them such affection and attentions as are customarily rendered to and bestowed upon parents by their children; that the said contract of adoption was, upon the part of said Elizabeth C. and Lavinus Dunham, a joint contract, but that no written deed of adoption was ever signed and executed by both and recorded in the city of St. Louis, as provided by the statutes of this State; that said Lavinus Dunham, however, frequently acknowledged said adoption before his death, and also by his will, and that said Elizabeth C. Dunham also acknowledged said adoption, both before and after her husband's death, and by her acts and words ratified said adoption after the first day of November, 1889.

"The court doth therefore order, adjudge and decree that the said contract between Thomas Hudson

and Elizabeth C. and Lavinus Dunham became and is in every respect an executed deed of adoption and, as such, established the status of plaintiffs as lawful children and legal heirs of ·said Elizabeth C. and Lavinus Dunham and entitles them to the full rights of such children and heirs in the estate of said Elizabeth C. Dunham; that the said Elizabeth C. Dunham, having died intestate and without issue of her body, the plaintiffs are her sole heirs and are entitled, in equal shares, to the whole of her estate, remaining for distribution upon final settlement thereof, after the payment of all lawful claims properly allowed against said estate and the costs of administration; that the costs of this proceeding be paid by the defendants, except the defendant Harry Troll, administrator of the estate of said Elizabeth C. Dunham, deceased.''

Interposing a motion for new trial and excepting to the action of the court in overruling it, defendants have duly perfected their appeal to this court.

When the cause was first reached on call before us, being of the opinion that the amount involved, apparently $25,000, was in excess of the jurisdiction of our court, we, of our own motion, transferred it to the Supreme Court. That court, on consideration and on motion of counsel for appellants, transferred it back to our court, as a cause not within the jurisdiction of the Supreme Court. So we proceed to its determination.

It was argued orally before us by counsel, who have also submitted elaborate briefs and arguments.

Counsel for appellants make five points upon which they claim reversal.

The first point made is on error of the trial court in refusing to dismiss plaintiff's suit on the ground that it was not lawful for Mrs. Dunham to adopt the plaintiffs, even by deed, since her husband was a non-resident of Missouri, and that it follows that she could

not bind herself by verbal contract to adopt. Answering this, the learned trial court found as a fact, and in this we agree with him, that Mrs. Dunham, both before and after the death of her husband and by her acts and words after the first day of November, 1889, had ratified the adoption. This date undoubtedly has reference to section 6864, Revised Statutes, 1889, a new section first appearing in that revision and which took effect on that date. See Revised Statutes 1889, section 6614. It is now section 8304, Revised Statutes 1909, and authorizes a married woman to contract as a *femme sole*. The trial court also apparently found that Dr. Dunham was a citizen of Missouri; it certainly found that he died in this State. It also appears that he left property here, that his will was probated here and his estate administered here. Ratification after removal of disability of coverture is valid. [Sharkey v. McDermott et al., 91 Mo. 647, 4 S. W. 107.]

The second point made is that the trial court erred in refusing to dismiss plaintiffs' suit because, even if Mrs. Dunham made the alleged contract, it was void, since she was a married woman and did not pursue the statutes by which a married woman could, in 1876, in any case, adopt a child. That is covered by what we have said and what the learned trial court has said as to ratification after November 1, 1889.

The third point is that the court erred in refusing to dismiss plaintiffs' suit because the evidence does not show that Mrs. Dunham promised to adopt the Hudson children.

Reading and considering the evidence as abstracted and set out by counsel for the respective parties, we find no reason to disagree with the conclusion reached on it by the learned trial court. It will serve no useful purpose to reproduce it here in detail. Without doing that, excerpts from it would not be very satisfactory. It is sufficient to say that tested by the many cases which have been before our own courts, it establishes

the fact of adoption by acts which estop both Dr. and Mrs. Dunham, and those claiming under them, adversely to respondents, from now disputing it. That adoption may be established by acts and conduct, where no legal deed of adoption has been exectued and recorded in due form of law, has been settled in our State by many decisions of our Supreme Court as well as of the Courts of Appeals. In passing see Sharkey v. McDermott et al., supra; Healey v. Simpson, 113 Mo. 340, 20 S. W. 881; Nowack v. Berger, 133 Mo. 24, 34 S. W. 489; Lynn v. Hockaday, 162 Mo. 111, 61 S. W. 885; Hockaday v. Lynn, 200 Mo. 456, 98 S. W. 585; Wales v. Holden, 209 Mo. 552, 108 S. W. 89; Westerman v. Schmidt et al., 80 Mo. App. 344; Thomas v. Maloney et al., 142 Mo. App. 193, 126 S. W. 522.

Looking outside of our own State we find the same rule prevailing. We venture to quote from a few of these later.

Van Tine v. Van Tine et al., 15 Atl. Rep. 249, S. C. 1 L. R. A. 155, a decision by Vice-Chancellor BIRD of New Jersey, presents features very much in common with the case at bar, so far as the facts of adoption are concerned. There was no execution of adoption papers. The father, a widower at the time, surrendered the custody of his daughter to his sister, who was childless, with the full understanding between them that the sister, the aunt of the child, would take care of her as her own child, provide for her and bring her up as her own. This, says the Vice-Chancellor, was "as full and complete a surrender of the rights of the father in or to the child as it were possible for him to make without a writing. It was also as complete an acceptance of the child on the part of the aunt, coupled with every fair, just, and reasonable obligation to treat her as her child in all respects, as could be effected without writing." Mrs. Stryker (the aunt) immediately took charge of the child, treating her in every respect as her own.

In Chehak et al. v. Battles et al., 133 Ia. 107, the defendant by a cross petition claimed an undivided fourth interest in certain lands which had belonged to the decedent. A demurrer was interposed and sustained to this cross-bill. What was claimed to be the deed of adoption in the case, while acknowledged by the parent who turned over the care and custody of the child to the parties who had agreed to adopt it, was not acknowledged by the adopting parties, husband and wife. Under the statute of Iowa at the time in force, an instrument of adoption to be valid must have been acknowledged by all the parties thereto and duly recorded. The instrument was not recorded. The conclusion of the Supreme Court was that the demurrer had been improperly sustained, the court saying (l. c. 119): "If the child has filled the place of a dutiful daughter to the adoptive parents until attaining majority, the financial benefit stipulated in the contract of adoption ought not to be denied because through the neglect of another, without fault on her part, statutory adoption has not been effected. The consideration according to the petition has been fully paid on the one side, the child surrendered by her mother, the name of her foster parents borne, and all the advantages which youth and affection can bestow enjoyed; while, on the other, though the adoptive parents have cherished and maintained her as their own, they have not performed that portion of their promise which entitled her to share in their estate, and this we hold ought in justice and good conscience to be specifically enforced. The demurrer to the petition should have been overruled."

Testing the evidence here by the principles applied in these cases, we hold that the fact of the adoption of these respondents by Mrs. Elizabeth C. Dunham has been established.

The fourth point is that the trial court erred in refusing to dismiss plaintiffs' suit because it is barred

by limitation; and the fifth is that the court erred in refusing to dismiss the suit because plaintiffs were guilty of laches. We will consider these together.

Mrs. Dunham died August 22, 1907; this suit was instituted December 21, 1909. Dr. Dunham named the children in his will, as adopted daughters, and left each of them one dollar, giving the residue of his estate to his wife. He had a right to do this, even in a case of children lawfully born to him; there being no contract to leave anything to them, it was sufficient that he named them as children; had them in mind when he disposed of his estate. He was under no obligation to leave them any particular share in his estate. The bulk of it passed to the wife. She could have disinherited the children by will, but dying intestate they took as children and as her heirs. [Davis v. Hendricks, 99 Mo. 478, l. c. 483, 12 S. W. 887; Westerman v. Schmidt, supra.] Until Mrs. Dunham died, no right of action existed in these plaintiffs or in any one for them. Their father had none, for he had no reason to question the fact of adoption, even if he knew that the law required papers to be executed and that without them adoption was not valid—absent acts amounting to adoption. He was not, so far as the evidence shows, a man in the situation of the one referred to in Wales v. Holden, supra, who was one of the most prominent lawyers of his part of the State (l. c. 556-561); was not shown to be learned in the law. For that matter neither were Dr. or Mrs. Dunham. In Sharkey v. McDermott, supra, a case having many features common to that at bar, it is held that no right of action existed until after the death of the wife. When she died intestate the adopted child could then assert its rights; until her death it could not be determined whether the adoption had been repudiated or recognized. So in Healey v. Simpson, supra, the suit was brought long after the claimed adoption by acts.

In Chehak et al. v. Battles et al., supra, the

proceeding to enforce recognition of adoption was brought many years after the adoption is said to have been made.

In Van Tine v. Van Tine, supra, the action of the child claiming to have been adopted and seeking to enforce her rights as an adopted child, was not brought until some twenty years or more after the claimed adoption.

These are a few out of many cases which go to show that there was no right of action until the death of Mrs. Dunham and no laches on the part of plaintiffs. Nor had either the five or the ten year statute run when this suit was instituted.

It is further urged in the reply brief by counsel for appellants, answering a suggestion made by counsel for respondents as to the jurisdiction of the court to entertain the action, that if it is true that a court of equity will not entertain a suit to establish a social status, the judgment should be reversed and the suit dismissed out of court; that being its sole object; it being further claimed that the public administrator, from the beginning has denied the jurisdiction of the circuit court to make any order touching the disposition of Mrs. Dunham's estate, he insisting that that is a matter within the jurisdiction of the probate court alone.   As will be noticed, this proposition as to the jurisdiction of the court is put rather tentatively and no authorities whatever are cited in support of it.

It is true that in Beach v. Bryan, 155 Mo. App. 33, 133 S. W. 635, we suggested a doubt as to whether that action, to compel an alleged agreement to allow the plaintiffs there to adopt a child, would lie—this on the ground that courts of equity deal with property rights, not over wrongs to the person, or to the enforcement of social relations. . But we refrained from expressing an opinion on that in the Beach case—not as counsel for respondents here incorrectly say, because counsel had waived jurisdiction, for that cannot be

done—but because that question had not been pressented or argued and we deemed it too important to determine without argument.

In the case at bar, however, the question of jurisdiction has been suggested and briefed to some extent. So we have it before us.

On the authority of the several decisions of our Supreme Court and two of the Courts of Appeals, to which we have referred above, we hold this suit is maintainable.

Thus, Sharkey v. McDermott, supra, was a suit to establish the fact of adoption. So was Healey v. Simpson, supra. Nowack v. Berger, surpa, was of like character, and a case in which the Supreme Court, see pages 43 and 44, itself entered up a decree establishing adoption and awarding to the plaintiff there one-fourth part or interest in the estate, real and personal, left by the party claimed to be the adopting parent. Wales v. Holden, supra, was a suit in equity to enforce specific performance of an alleged adoption. Judge VALLIANT, who wrote the opinion, never questioned the jurisdiction of the circuit court over the subject-matter. The cases of Westerman v. Schmidt and Thomas v. Maloney, supra, were each suits in equity to enforce contracts to adopt.

On the authority of these cases, we must hold that the suit was within the jurisdiction of the circuit court, and that it was within its jurisdiction to enter up the decree which it entered.

The judgment of the circuit court is in all things affirmed. *Nortoni* and *Allen, JJ.*, concur.