PRICE v. WALLACE. *

(Circuit Court of Appeals, Ninth Circuit.   May 14, 1917.)

No. 2849.

1. TRUSTS ⬤══44(3)—WILLS ⬤══58(2)—AGREEMENTS TO DEVISE OR BEQUEATH—
SUFFICIENCY OF EVIDENCE.
   Agreements whereby a trust is created, or whereby one agrees to leave
a child's share of his estate to another, though not legally adopted, or to
leave all of his property to another, will not be enforced in equity, un-
less it is clearly and satisfactorily shown that the agreement relied on
was made, that it was clear and specific in its terms, and that by en-
forcing it the true intent of the parties is being carried out.
   [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 68;  Wills, Cent.
Dig. § 165.]

2. TRUSTS ⬤══44(1)—WILLS ⬤══58(2)—AGREEMENTS TO DEVISE OR BEQUEATH—
SUFFICIENCY OF EVIDENCE.
   Evidence held insufficient to establish an alleged agreement by plain-
tiff's stepfather that, if she would give up and procure a divorce from her
husband, and live with him, he would leave her a specified share of his
property, or an agreement by the stepfather's second wife, after his
death, to hold such share of the estate in trust for plaintiff.
   [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 66;  Wills, Cent.
Dig. § 165.]

3. TRIAL ⬤══397(4)—DECISION—APPLICABILITY TO ISSUES.
   Error cannot be predicated upon the refusal of the court to make a
decision on an issue not tried.
   [Ed. Note.—For other cases, see Trial, Cent. Dig. § 943.]

Appeal from the District Court of the United States for the District
of Oregon; Charles E. Wolverton, Judge.

Suit by Elizabeth M. Price against Marie Dewey Wallace.   From a
decree dismissing the bill (224 Fed. 576), plaintiff appeals.   Affirmed.

This is a suit to have Marie Dewey Wallace, the appellee, adjudged a trus-
tee for the benefit of the complainant, appellant, Elizabeth N. Price, and her
children, with respect to a two-thirds interest in the property of the estate of
Peter B. Smith, deceased, and for an accounting and general relief.   The sub-
stance of the complaint is: That complainant lived with Peter B. Smith, her
stepfather, and her mother in Minneapolis, and adopted the name of Smith,
and was regarded and treated by her stepfather as if she was his own daugh-
ter, and that she was told by him that he wished her to regard him as her
own father, and that as his daughter she should be well provided for;  that in
February, 1899, with the knowledge and approval of her stepfather, she mar-
ried Dr. MacLean, a surgeon in the Army, and thereafter had two children;
that about 1900 her mother was ill, and that her stepfather urged Dr. Mac-
Lean to resign from the Army and to return to Minneapolis, so that complain-
ant could be with her invalid mother; that Dr. MacLean resigned, and with his
family returned to Minneapolis just before the death of Mrs. Smith in June,
1900; that complainant remained in Minneapolis and made her home with her
stepfather, who told her that he wished her and her family to live with him
during the remainder of his life; that about October, 1900, Dr. MacLean be-
came involved in some trouble and left Minneapolis; that complainant wished
to go with him, but that her stepfather advised against her continuing to live
with Dr. MacLean and urged her to bring suit for divorce; that in 1901, yield-
ing to the wishes of her stepfather, she was granted a divorce in Minnesota
and was awarded the custody of her children; that in October, 1900, when Dr.
MacLean had his trouble, and before and after his departure from Minne-

⬤══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
⸰Rehearing denied October 8, 1917.

sota, her stepfather entered into an agreement with her to the effect that, if she would remain at his home with her children, and treat and regard him as her own father, and care for him and take charge of his household as though she were has own daughter, he (Smith) would support the complainant as if she were his own daughter, and as if her children were his own grand-children, and that he would will to the complainant, for herself and children, all the property that he might own at the time of his death own; and that if she refused to do this and persisted in following Dr. MacLean, he (Smith) would leave no property to them and would have nothing to do with them.

Complainant says that, having great respect for her stepfather, and believing that Dr. MacLean had made it improper for her to live with him again, she agreed to the proposal of her stepfather; that after making the agreement in October, 1900, she performed all the obligations imposed upon her, and remained with Mr. Smith, and was maintained and supported by him; that in February, 1902, Mr. Smith told her he intended to marry Marie Wallace, defendant herein, and said that, inasmuch as his new wife would relieve the complainant of the care of his household and of the service to him under the agreement, and that inasmuch as he desired complainant to travel, he desired the agreement which had been made as hereinbefore described to be modified with respect to his promise to will all his property at his death to the complainant and her children, so as to leave to the complainant, for herself and her two children, two-thirds of the property which he might own at his death, one-third to the complainant for her own separate use, and one-third to the complainant for the use of her children, and one-third to the defendant whom he proposed to marry. Plaintiff alleges that the modification was assented to, and that in consideration of the performance of the contract up to that time, and of the plaintiff's promise to continue the performance of the contract, as modified, it was agreed that Smith would leave to the complainant, for herself and the children, two-thirds of the property which he might own, and that thereafter complainant continued living with her stepfather as his own daughter, and performed all her duties to him under the contract, as so modified, as long as he permitted her to do so. It is alleged that Mr. Smith married the defendant in May, 1902, and that complainant and her children lived with Mr. and Mrs. Smith for about 15 months after the marriage, except for a short time, when plaintiff joined a chorus in an operatic company; that in August or September, 1903, defendant being annoyed by the presence of complainant and her children in the household, she was sent by Mr. Smith to California and there supported by Mr. Smith; that in August, 1905, she married E. J. Price in California, and was deserted by him about 1907, and that Price died in 1914; that Mr. Smith died in August, 1907, and that thereafter complainant went to Minneapolis with her children and has earned her own living since; that in January, 1906, Mr. Smith made a will leaving all of his property to the defendant; that, within a few days after Mr. Smith died, complainant had a conference with the defendant, who told complainant of the agreement and modified agreement made between her husband and complainant, and told her that it had been understood and agreed between Mr. Smith and herself that, if he would leave his property to her, the defendant, as a protection against possible dissipation by the husband of this complainant, that the defendant should hold two-thirds in trust for complainant and her children, and account therefor, and in due time turn it over to the complainant in accordance with the agreement and modified agreement; that complainant urged the wisdom of employing counsel, but that defendant dissuaded her from doing so, and told her that she understood the agreement and modified agreement, and intended to carry out the same, and promised that if complainant would not consult a lawyer and take steps to enforce the agreement, or make appearance at the probate proceedings of the will, and make no claim by reason of the agreement, and would allow distribution of the estate to defendant as the sole legatee, defendant would respect and recognize complainant's rights, and would take the property in her own name, but would hold two-thirds in trust, and charged and impressed with a trust in favor of the complainant, and would account and live up to the alleged agreement. Complainant says that, relying upon the promises, she made no assertion of her rights

and permitted the defendant to receive all property in her own name, and that defendant refuses to account or to turn over.

The answer denies all the allegations with respect to the agreements as alleged. After trial the District Court dismissed the complaint, and plaintiff appeals.

William H. Hallam, of Portland, Or., for appellant.

Wood, Montague & Hunt and Erskine Wood, all of Portland, Or., and H. V. Mercer, of Minneapolis, Minn., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The District Court in a well-considered opinion has carefully stated the issues and with considerable detail quoted from and analyzed the material evidence introduced upon the trial. Price v. Wallace, 224 Fed. 576. There is, therefore, no necessity for us to restate the testimony at any length, and we shall not attempt to do so. The legal questions involved in the merits of the appeal are simple, and to the end that our review may go directly to the points affecting the merits, we will dispose of the questions of practice submitted by appellee by formally overruling the objections to the assignment of errors and denying the motion to dismiss the appeal.

In very general language appellant assigned error because the Court denied the relief plaintiff prayed for. But in the brief filed by her counsel she states her position to be that a trust was constructed upon foundations stated substantially as follows: (1) Smith's agreement with the complainant after he expelled the husband and father, which agreement was modified when Smith engaged to marry the defendant; (2) upon a "correlative stipulation between Smith and the defendant"; (3) upon the ground of "equitable adoption"; and (4) because of "Smith's total commitment," by reason of which equity will compel the enforcement of the stand he took.

[1] We need not discuss the rule, thoroughly well established as it is, that a trust may be created and enforced where a filial relationship is actually assumed, or that a man may make a contract whereby he agrees to leave to one, even though she has not been legally adopted, a child's share of his estate at his death, and that services and companionship will constitute valuable consideration for the promise of the man. Healey v. Simpson, 113 Mo. 340, 20 S. W. 881. Nor will we question the doctrine that a contract in parol may be made under which one may leave all his property to another, if she would leave her home and thereafter live with him and care for him. Owen v. McNally, 113 Cal. 444, 45 Pac. 710, 33 L. R. A. 369. But the authorities in support of the rule that equity will enforce such agreements are in accord in holding that the courts will not aid, unless it is clearly and satisfactorily shown that the agreement relied on was made, that it was clear and specific in its terms, and that by enforcing it the true intent of the parties is being carried out. Rogers v. Schlotterback, 167 Cal. 35, 138 Pac. 728.

It was evidently upon this theory that the judge of the District Court proceeded, and after stating the facts and quoting verbatim important parts of the testimony of complainant and of her witnesses, said:

"Upon the whole, it is clear to my mind that the plaintiff has failed to establish, either the alleged first or the modified agreement by such clear and convincing proof as is required for the substantiation of parol agreements of the kind. And as to the alleged trust agreement with the defendant, the clear preponderance of the evidence is against the plaintiff's contention."

[2] It being, therefore, in respect to the existence of the agreements or arrangements, original and modified, relied upon, that appellant failed in the court below, we have given very careful attention to the evidence bearing upon that same fundamental ground, and in doing so have weighed the evidence of Mrs. Price and considered it by itself, as well as in connection with the other evidence offered by her, and with the acts and expressions by letters and otherwise of Mr. Smith, and with the evidence introduced by the defendant, including that of Mrs. Wallace herself, and of Mrs. Jessie Carey Smith. Extended quotations from the record would but serve to affirm the views of the District Court. The direct testimony of the plaintiff, to the effect that Mr. Smith told her that, if she would give up her husband, everything that he had would be hers, and that she finally assented and told her stepfather to "go ahead and get the divorce," is very much weakened by her further testimony that before the divorce was applied for she came to the conclusion that her husband could not support her. Nor can we sustain the conclusion that plaintiff was impelled to sue for divorce under any agreement, made in 1900 or 1901, that Mr. Smith would leave his property to her. The circumstances developed, when considered with the testimony of Jessie Carey Smith, show that the plaintiff's reason for suing for divorce was because her husband was in trouble again, and had been in prison after he left Minneapolis, and was regarded by plaintiff as unworthy.

We cannot disturb the conclusion of the District Court that no trust relationship between Mrs. Price and Mrs. Wallace was established. The positive denial by defendant of the statement of the plaintiff that there was a conversation between them at Minneapolis, after the death of Smith, wherein defendant said that she would carry out the so-called modified agreement, which Mrs. Price said was made with her stepfather, is supported by many significant circumstances. For instance, there is the evidence that, before plaintiff married Price, Smith consulted plaintiff's own father about what was best for the plaintiff and her children, and had an understanding with him that each would contribute $50 a month toward the support of the family in California, and that Smith did contribute to her support until she married Price, when he reduced his contribtuion to what he thought would help maintain plaintiff's children. The letter (quoted in the opinion of the District Court) of Smith to Wright, the uncle of appellant by marriage, in February, 1903, is also worthy of special mention. There is also the evidence of Mr. Lauderdale, a close friend of Smith, that Smith said he was displeased with plaintiff and intended to stop helping her, but would continue to do something for the children as long as they were in his home.

[3] As there was no issue tried of a legal adoption, or claim of right by inheritance as an adopted child, no error can be predicated upon the refusal of the court to make decision thereon.

In conclusion, our opinion is that plaintiff has failed to demonstrate that the District Court erred in its decision. Study of the record impresses upon us that there is a lack of strength in plaintiff's case upon the most essential issue. We must therefore hold that it would be unjust to decree that Mr. Smith did not have the power to do with his property what he wished when he made the will in favor of the defendant.

The decree is affirmed.