**BARBEE et al. v. CUBLEY et al.**

No. 10461.

Court of Civil Appeals of Texas. Dallas.
Jan. 16, 1930.
Rehearing Denied March 15, 1930.

Claude C. Westerfeld, Carden, Starling, Carden & Hemphill, Handley & Handley, and Davis & Hatchell, all of Dallas, for appellants.

J. C. Patton, Clark & Clark, and Lee R. Stroud, all of Dallas, for appellees.

**VAUGHAN, J.**

Appellees, Mrs. Jessie Cubley and K. A. Cubley, husband and wife, filed their original petition in the trial court on August 23, 1927, the party defendants named therein being Mrs. J. H. Barbee and husband, J. H. Barbee, and William Spillars, appellants, the Mercantile National Bank of Dallas, and Mr. Claude Westerfeld. On the 16th day of April, 1928, the appellees filed their fourth amended original petition, on which this cause was tried, and in which their suit as to Mr. Westerfeld was dismissed.

For convenience, appellees will hereafter be designated as follows: Mrs. Jessie Cubley as appellee Jessie, and K. A. Cubley as appellee Cubley.

In order to properly present the case, as made by appellees' said amended petition, we find it necessary to make the following extended statement therefrom: Appellees alleged that Mrs. M. L. Leonard, formerly Mrs. B. F. Thyng, died intestate in the city of Dallas on or about June 23, 1927, owning, seized, and possessing in fee simple, and being her own and individual estate, property consisting of approximately $62,000 in cash and $132,000 of high-class real estate, vendor's lien notes, and other personal property, all of which was fully itemized in their petition; that appellee Jessie was and is entitled to an undivided three-fourths interest in said estate; that appellants Mrs. J. H. (Lula) Barbee and William Spillars, the grandchildren of Mrs. M. L. Leonard, were and each are entitled to an undivided one-eighth thereof; that appellee Jessie was born in Bay City, Mich., on the 4th day of July, 1882; and that, on or about January 20, 1888, her father being dead, her mother entered into and made a valid and legal contract of adoption with Mrs. M. L. Thyng (afterwards Mrs. M. L. Leonard), and her husband, B. F. Thyng, in substance, as follows:

It was alleged that Mrs. Mamie E. Partridge, the mother of appellee Jessie, did surrender her said child to them for adoption, and, by said contract of adoption, said B. F. Thyng and wife, Mrs. M. L. Thyng, agreed to and did adopt said child. Further allegations were made, viz.: "That the plaintiff's mother and the said B. F. Thyng and wife, Mrs. M. L. Thyng, afterwards the said Mrs. M. L. Leonard, entered into said contract, by which it was agreed that the plaintiff's mother would surrender her said child, the plaintiff, to them; that they would rear said child and legally adopt her as their own child, and leave said child all of their property, real and personal, at their deaths, and that at their deaths plaintiff herein, or their adopted child, should and would have all of their property; that plaintiff, Mrs. Jessie Cubley, was held out to the world by Mr. and Mrs. Thyng as their child, and was accorded the rights and privileges of one by them, and that Mr. and Mrs. Thyng always regarded her and considered her so to be, and that she in turn performed services and rendered the companionship of an adopted daughter; that said plaintiff continued to live with her adopted mother, Mrs. B. F. Thyng, as her adopted child, and continued to give her said adopted mother all respect, love and obedience as her own child after the death of her said adopting father; that Mrs. B. F. Thyng, the widow, considered and treated the said Jessie as her own child, and had no intent or thought but that Jessie should and would have her share of all her estate as her adopted child; that the said Mrs. B. F. Thyng, afterwards Mrs. M. L. Leonard, did, after the death of her husband, B. F. Thyng, and as a single woman, thus ratify this said contract of adoption, and did expressly agree to carry out and did carry out the terms thereof, agreeing with plaintiff, Jessie, that she was her adopted daughter, as stipulated in said written contract of adoption, and she did carry out and perform said written contract in accordance with the terms and provisions thereof, and did in all things ratify and confirm the same after she became a widow, and thereby said written contract of adoption became as binding upon her as if made when she was a feme sole, and not under coverture; that said Mrs. B. F. Thyng did, after the death of her husband, B. F. Thyng, and as a single woman, ratify the said written contract of adoption and expressly agreed to carry out the terms thereof, agreeing with Jessie to leave her her share or part of all her property owned by her at her death; that never at any time was the relation of mother and child changed by Jessie and Mrs. B. F. Thyng; that plaintiff had for many years been taught and led to believe by Mrs. Thyng that the contract of adoption had been properly executed and filed with the County Clerk of Dallas County, Texas, for record, as required by law; that after diligent search said plaintiff discovered that said contract of adoption was never filed with the said County Clerk, had been misplaced or lost, and is not to be found with the papers and records of Mrs. M. L. Leonard, or elsewhere; that said written contract of adoption was duly made out and signed by Mr. and Mrs. B. F. Thyng and Mrs. Mamie E. Partridge, the widowed mother of the plaintiff, Jessie, and was duly acknowledged by all of them for record, as required by law, and was left in the custody of Mrs. B. F. Thyng to be filed and recorded, and was at the time of her death in her possession, or should have been in her possession; that if said adoption contract was never filed for record by Mr. and Mrs. Thyng with the County Clerk of Dallas County, Texas, as required by law, it was not the fault of Jessie, nor her mother, nor anyone chargeable to her, all of whom relied upon the agreement and promise of Mr. and Mrs. Thyng to file same of record, and they and those claiming under them are estopped from denying the validity of said contract of adoption and the specific performance thereof."

The date of the death of Mr. B. F. Thyng was not alleged. The original prayer for relief was amended by trial amendment containing these words: "They (plaintiffs) do not seek or ask for a partition of the property in this suit, but reserve the right to partition the property in a subsequent suit", so as to eliminate from the amended original petition the following, "Her share or interest in the property of said estate be adjudicated and established, and that the respective shares of the defendants, and each of them, be adjudicated and established." The prayer was also specifically amended to read as follows,

"That the plaintiff, Jessie Cubley, be adjudged and decreed the adopted child and heir of Mr. and Mrs. B. F. Thyng, afterwards Mrs. M. L. Leonard, or in the alternative, that plaintiff be decreed a specific performance of said contract of adoption, and for such other and further, general and special, relief as she may be entitled to in law and in equity."

By trial amendment, appellees alleged that the contract referred to in the petition "recited and provided that plaintiff, Jessie Partridge, then a young child, was thereby adopted by them and should take of their estate at the death of both of them as their adopted child and heir, and it did further state and recite, and it was by them further agreed and contracted that, at their death, the child Jessie should, for the consideration of said past and future services take of their estates at their death one-half thereof."

Appellants' answer consisted of a general denial, every conceivable plea of each and all of the several statutes of limitation, plea to the effect that the alleged contract was void because not executed, as provided by the statutes of the state of Texas, and by verified plea denied the execution of the instruments charged to be executed, and pleaded the want of consideration for the execution of the alleged contract or instrument. The case was submitted to a jury upon the following special issues, which were answered as indicated, namely:

"Special Issue No. 1: Do you find and believe from a preponderance of the evidence that an instrument was signed by Mr. B. F. Thyng while the witness, Mrs. Fuller, was in a hotel in Chicago? Answer: Yes.

"Special Issue No. 2: Do you find and believe from a preponderance of the evidence that such instrument was then signed by Mrs. Thyng? Answer: Yes.

"Special Issue No. 3: Do you find and believe from a preponderance of the evidence that such instrument was one which provided in substance that Mr. and Mrs. Thyng made the child, Jessie Partridge, now Mrs. Cubley, their heir, and that the latter, upon the death of Mr. and Mrs. Thyng, was to have one-half of their property and the other one-half was to go to Mrs. Thyng's son? Answer: Yes.

"Special Issue No. 4: Do you find and believe from a preponderance of the evidence that such instrument, if any, was acknowledged by Mrs. Thyng before a Notary Public? Answer: Yes.

"Special Issue No. 5: Do you find and believe from a preponderance of the evidence that the Notary Public taking such acknowledgment, if you have found, attested the same? Answer: Yes.

"Special Issue No. 6: Do you find and believe from a preponderance of the evidence that Mrs. M. L. Thyng and B. F. Thyng treat-ed and held out to the world the plaintiff as their adopted daughter? Answer: Yes."

Based upon said verdict, both appellants and appellees filed motions for judgment. The court overruled appellants' motion and sustained that of appellees, and entered judgment in their favor as follows: "That the alleged contract of adoption of Jessie Partridge by Mr. and Mrs. B. F. Thyng, of date January 20, 1888, and the relinquishment contract of that date by the mother of said Jessie Partridge agreeing to her adoption by them be and the same are hereby established and decreed and held to be legal and valid contracts, and is entitled to specific performance and to be enforced in equity though not a statutory adoption because it was not filed with the County Clerk of Dallas County, Texas."

The proceedings had leading up to and including the rendition of said judgment are before us for review and revision under appropriate assignments and propositions. Following are all of the material facts found by this court to have been established by the evidence introduced, as shown by the statement of facts before us: The maiden name of appellee Jessie was Partridge and she is a daughter of the witness, Mrs. M. E. Fuller, by her former husband, —— Partridge, who died some time prior to 1885, the exact date of his death not being disclosed by the record. Said appellee was born on the 4th day of July, 1882. According to the testimony of the witness, Mrs. M. E. Fuller, the following instruments, which were brought from Texas by the Thyngs, were signed by the witness, B. F. Thyng and wife, M. L. Thyng, in Chicago, Ill., on or about the 20th day of January, A. D., 1888, viz., the one referred to in the pleadings as an adoption contract and the other as a relinquishment agreement, her testimony in reference to said instruments being as follows: "I testified that I read the adoption papers before I signed them. I read the ones that they signed. The papers stated that they took Jessie for their heir and also said that at Mr. Thyng's death she was to have half of what they left, the other half was to go to Mrs. Thyng's son, that Jessie was to be taken as their heir, and after the deaths she was to have half of the estate, the other half to go to Mrs. Thyng's son. The paper that I signed was that I relinquished her to them; that they were to take her and bring her up, and that I was to have nothing further to do with her. The paper that I signed was that I was giving Jessie up to them, that she would, by me signing the paper that I would have nothing furthermore to say about her."

Mr. and Mrs. Thyng kept said papers after they were executed, and they were never thereafter seen by said witness; the one referred to as the adoption paper was never recorded in the office of the county clerk of Dallas county, Tex., the county in which said Thyngs resided, or filed with said clerk to be

recorded. That B. F. and M. L. Thyng were husband and wife when said contracts were executed, were divorced on May 18, 1889, and said B. F. Thyng died during July, 1891. Appellants Mrs. J. H. Barbee and William Spillars were the grandchildren of Mrs. Thyng, being the children of her son living at the time said instruments were executed.

The only consideration for the execution of the instrument referred to as the adoption contract, as shown by the testimony of the witness, Mrs. M. E. Fuller, was that she was to relinquish her control over her child in consideration of the execution of said instrument. Appellee Jessie married one Otto Amlong on the 20th day of August, 1897; she then moved to Toledo, Ohio, where her mother, Mrs. M. E. Fuller, then resided. Said appellee and Amlong were divorced during the year 1899, and she married appellee Cubley in 1899.

Several witnesses introduced by appellee testified, in substance, that Mrs. M. L. Leonard had introduced appellee Jessie as her adopted daughter and had often spoken of her as her adopted child.

What is the legal effect of the written instruments established by the testimony of the witness, Mrs. Fuller? The terms and provisions of said instruments so established are before us under the same rules of law that would determine the legal effect of the original documents, and are to be accepted, for all legal purposes, as being in hæc verba the language employed in the execution of said instruments. Is the instrument executed by Mr. B. F. Thyng and wife, M. L. Thyng, an adoption agreement? The law in force prior to and at the time of the execution of said instrument were articles 1 and 2, R. C. S. of Texas 1911, namely:

"Article 1. *How heir adopted.*—Any person wishing to adopt another as his legal heir may do so by filing in the office of the clerk of the county court of the county in which he may reside a statement in writing, by him signed and duly authenticated or acknowledged, as deeds are required to be, which statement shall recite, in substance, that he adopts the person named therein as his legal heir, and the same shall be admitted to record in said office.

"Art. 2. *Rights of adopted heir.*—Such statement in writing, signed and authenticated or acknowledged, and recorded as aforesaid, shall entitle the party so adopted to all the rights and privileges, both in law and equity, of a legal heir of the party so adopting him; provided, however, that if the party adopting such heir have, at the time of of such adoption, or shall thereafter have, a child begotten in lawful wedlock, such adopted heir shall in no case inherit more than one-fourth of the estate of the party adopting him."

The above articles constituted the law of Texas on the subject of adoption until 1907, as there was no such procedure known to the common law as the adoption of a legal heir.

It will be noted that neither the word "adopts," nor an expression equivalent thereto, is contained in the instrument executed by B. F. Thyng and wife, M. L. Thyng, and we have reached the conclusion, from a careful study of the language of said contract, that it cannot be logically gathered therefrom, that it is either an adoption instrument or an executory contract to adopt appellee Jessie, or a contract to leave her property. Furthermore, if said instrument in fact amounted to an adoption agreement, same not having been filed in the office of the county clerk of Dallas county, in which county the Thyngs resided, no rights accrued thereunder as an adoption agreement, the filing of same for record being necessary for it to become an executed instrument, binding upon the Thyngs. Jordan v. Abney, 97 Tex. 296, 78 S. W. 489; Powell v. Ott (Tex. Civ. App.) 146 S. W. 1019; Conrad v. Herring, 36 Tex. Civ. App. 616, 83 S. W. 427; Sanders v. Lane (Tex. Com. App.) 227 S. W. 946; Harle v. Harle, 109 Tex. 214, 204 S. W. 317, 15 A. L. R. 1261; State v. Yturria, 109 Tex. 220, 204 S. W. 315, L. R. A. 1918F, 1079; Royal Neighbors v. Fletcher (Tex. Civ. App.) 230 S. W. 476, par. 2; Thompson v. Waits (Tex. Civ. App.) 159 S. W. 82; Preston v. Mayo (Tex. Civ. App.) 238 S. W. 1008; Clark v. West, 96 Tex. 437, 73 S. W. 797; Masterson v. Harris, 107 Tex. 73, 174 S. W. 570.

The instrument under discussion does not contain a promise to do anything, or purport to vest any present interest in appellee Jessie. Its language is in the present tense, in reference to making her at the present time an heir, to take effect upon the death of the Thyngs. It provides that said Jessie should take one-half of the property left by the Thyngs at their deaths, and that the remaining moiety of said property should go to Mrs. Thyng's son. This instrument confers upon appellee Jessie one-half of the property the Thyngs should die seized of, while under the provisions of the adoption statute appellee Jessie would have only been entitled to one-fourth of the estate of said Thyngs, of which they should die seized, she having at the time of such adoption a son begotten in lawful wedlock. This instrument undertakes to do that which the law provides shall not be done by an adoption instrument, namely, to enlarge the statutory rights of inheritance, not only inconsistent with the statute of adoption, but contrary thereto, and to decrease the rights of statutory inheritance of the son of Mrs. Thyng, begotten in lawful wedlock and living at the time of such adoption. This enlargement of the rights of appellee Jessie and the reduc-

tion of the rights of the son of Mrs. Thyng clearly make said instrument testamentary in character, and, not having been executed in the manner and with the formalities required to constitute same a valid will and testament, is of no legal force or effect. Williams v. Claunch, 44 Tex. Civ. App. 25, 97 S. W. 111, and authorities cited therein. Allen v. Mulkey (Tex. Civ. App.) 19 S.W.(2d) 936, 940.

We are therefore of opinion that the court erred in refusing appellants' request for an instructed verdict in their favor, and in entering judgment in favor of appellee Mrs. Jessie Cubley on the verdict rendered. It is therefore ordered that the judgment of the district court be, and the same is hereby, reversed, and judgment is here rendered in favor of appellants, denying to appellees the relief sought in this litigation.

Reversed and rendered.

## On Appellees' Motion for Rehearing.

But for the position assumed by appellee in their amended motion for rehearing, namely:

"(a) In line with haec verba requirement, the opinion errs in the law where it further holds and says, 'It will be noted that neither the word *adopted* nor an *equivalent* thereto is contained in the instrument executed by B. F. Thyng and wife, M. L. Thyng, and we have reached the conclusion, from a careful study of the language of said contract, that it cannot be logically gathered therefrom, that it is either an adoption instrument or an executory contract to adopt appellee Jessie, or a contract to leave her property; this is not believed to be the law of construction of the words—for it is one of law—and the law (we contend) makes no substantial difference in the two expressions: they *took* Jessie to be their heir—they *adopted* Jessie to be their heir';

"(b) That rather than to hold this instrument (referring to the contract as established by the verdict of the jury) of no legal effect, that is invalid, if possible it should be treated as a contract to leave property at death;

"(c) The court erred in holding, as expressed in the opinion, '* * * from a careful study of the language of said contract, that it cannot be logically gathered therefrom that it is either an adoption instrument or an executory contract to adopt,' in that, if the court means thereby that, the written paper was not an adoption instrument but invalid because not recorded, then appellees concur, but if it means 'that its rendered haec verba was not sufficiently evidenced by the viva voce testimony including Mrs. Thyng's declarations or that *took* is not substantially equivalent as *adopted*, as used,'

then appellees answer that 'it must mean one or the other';

"(d) That court erred in holding the haec verba language of the written instrument, which was invalid until recorded, together with the parole promise contracting to record it and to thus validate it and the relinquishment, did not in law constitute a valid contract of adoption;

"(e) If the court's opinion or holding is, that Mrs. Thyng being a 'married woman' has any bearing in the court's holding, it is error and is here assigned, because appellees pleaded coverture properly, not merely saying a 'married woman'; actual coverture was denied by appellees; appellants introduced ample proof that at the time Mr. and Mrs. Thyng were at the Farwell Hotel, January 20, 1888, when she signed and acknowledged the papers, she was not under actual coverture, but was then living in Dallas, Texas and said B. F. Thyng had not lived or cohabited with her for three years or more, had for three years wholly abandoned her, and had for three years wholly failed to contribute to her support; that one year and twenty days after signing the contract involved, B. F. Thyng then was living and had been in Massachusetts,"

we would not feel called upon to further review the law applicable to the rights of the parties as presented by the record before us under the proposition advanced by appellants and the counter propositions presented by appellees.

Under the findings of the jury, in answer to the special issues submitted, the following are all of the facts established thereby, namely: That an instrument was signed by B. F. Thyng while the witness Mrs. Fuller was in a hotel in Chicago; that such instrument was then signed by Mrs. Thyng and was one which provided, in substance, that Mr. and Mrs. Thyng made the child Jessie Partridge (now Mrs. Jessie Cubley) their heir, and that the latter, upon the death of Mr. and Mrs. Thyng, was to receive one-half of their property, and one-half was to go to Mrs. Thyng's son; that said instrument was acknowledged by Mrs. Thyng before a notary public and same attested by him; that Mr. and Mrs. Thyng treated and held out to the world appellee Jessie Cubley as their adopted daughter.

■■ As to the intent of the parties, other than that expressed in the instrument itself, no issue was submitted, or requested by appellees to be submitted, to the jury as to or including such intent. The issues submitted in addition to No. 3 only called for a finding whether or not the instrument described in issue No. 3 was executed by such parties at the time and place also described therein. If the instrument so found to have been executed was in any sense ambiguous, so that

the circumstances surrounding its execution may be considered in construing it, then such facts and circumstances and such intent of the parties became a jury question. Arlington Heights Co. v. Citizens' Ry. Co. (Tex. Civ. App.) 160 S. W. 1121; Feigelson v. Brown (Tex. Civ. App.) 126 S. W. 17; Plummer v. Simms (Tex. Civ. App.) 177 S. W. 1041. It is true that appellees plead an "adoption" instrument, a "contract to adopt," a "contract to leave property," but no issue was requested or submitted requiring the jury to determine whether a contract described in the petition was executed, or whether the intent of the parties executing said instrument was contractual. Therefore such issues were waived. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

There is nothing ambiguous in the written instrument, described by the witness Mrs. Fuller and found by the jury to have been executed; neither do the circumstances surrounding its execution create any ambiguity. Therefore its construction was purely a question of law for the court. Dunn v. Price, 87 Tex. 318, 28 S. W. 681; Penn v. Hare (Tex. Civ. App.) 223 S. W. 527.

There is no express promise of any kind or character in said instrument, unless it can be said that the words, "and that the latter upon the death of Mr. and Mrs. Thyng was to have one-half of their property," amount to an express promise that appellee Jessie Cubley should receive one-half of the property owned by said Thyngs at their deaths. Appellees pleaded an express promise in writing and an estoppel resulting from a failure to record the instrument, and not an implied promise arising from the terms of the instrument involved. Assuming that such was the effect of the contract, as pleaded by appellees, would appellee Jessie Cubley be entitled to recover under the facts of this case? The undisputed evidence established that B. F. Thyng and Mrs. M. L. Thyng were husband and wife when the contract sought to be enforced was executed; that Mrs. Thyng had a living son; that said Thyngs were divorced May 18, 1889 (after the execution of said contract); that B. F. Thyng died when appellee Jessie Cubley was about seven years of age. Furthermore, appellees averred in their petition that appellants Mrs. J. H. Barbee and William Spillars were grandchildren of the deceased, Mrs. M. L. Thyng.

Article 4610, R. S. 1925, which has been in force since A. D. 1840, prohibiting prenuptial agreements having certain objects, has been construed as also prohibiting postnuptial agreements of such a character. Groesbeck v. Groesbeck, 78 Tex. 664, 14 S. W. 792; Proetzel v. Schroeder, 83 Tex. 684, 19 S. W. 292. Although article 42, R. S. 1925, permits a married woman to adopt another as her legal heir, article 4610, supra, prohibits any implied construction of the adoption statute so as to permit husband and wife to enter into an executory contract to adopt an heir. The terms of the contract found by the jury to have been made by the Thyngs was contrary to said article 4610, in that it altered the legal orders of descent with respect to Mrs. Thyng and her husband, at that time living separate and apart, but not divorced, in what concerns the inheritance of Mrs. Thyng's son and his posterity. If there were no such contract, her husband not having any children, Mrs. Thyng at his death would inherit from him his share of the community estate, and also one-third of the personal property belonging to his separate estate. Moreover, in the absence of this contract, Mrs. Thyng's son and his posterity would, upon her death, have taken all of the property then belonging to her; said Thyngs having been divorced.

Construing the instrument as an executory contract to adopt, then Mrs. Thyng entered into a contract with her husband, B. F. Thyng, whereby the legal orders of descent and distribution were altered in violation of said article 4610. The force and effect of this statute present additional reasons why the adoption statute should be construed as in the case of Jordan v. Abney, 97 Tex. 296, 78 S. W. 489, as not conferring any rights whatever unless the deed of adoption is executed in accordance with the provisions of the adoption statute and filed for record as therein required, which is clearly exclusive of all other methods. The provisions of said statute are as exclusive for rights to be acquired thereunder as is the law governing the execution and probate of wills, and very correctly so, as titles after the death of the adopting party are transmitted thereby.

Did the contract create a legal obligation on the part of and enforceable against Mrs. M. L. Thyng, a married woman, under any one of appellees' several interpretations of its legal effect? Until A. D. 1913, article 4624 of the A. D. 1911 R. C. S. provided as follows: "The wife may contract debts for necessaries furnished herself or children, and for all expenses which may have been incurred by the wife for the benefit of her separate property; and for such debts suit may be brought in the manner prescribed in article 1840."

Under this statute a married woman could not legally bind herself by any contract beyond the limitation fixed in this article, and as the subject-matter of the contract under review is not in any respect comprehended within the provisions of said article, but to the contrary excluded thereby, whether the effect of the contract was to obligate Mrs. M. L. Thyng to adopt appellee Jessie Cubley as her legal heir or to leave property to her

at the death of said Thyngs, said contract was invalid as against Mrs. Thyng. Wadkins v. Watson, 86 Tex. 194, 24 S. W. 386, 22 L. R. A. 779; Baird v. Patillo (Tex. Civ. App.) 24 S. W. 813; Jones v. Goff, 63 Tex. 255; Kellett v. Trice, 95 Tex. 160, 66 S. W. 53; Blakeley v. Kanaman, 107 Tex. 206, 175 S. W. 674; West v. Clark, 28 Tex. Civ. App. 1, 66 S. W. 215.

After a careful consideration of appellees' motion for rehearing, it not being made to appear therefrom that this court erred in its judgment rendered adverse to appellees, their motion is in all things overruled.

Overruled.