## ASHCROFT et al. v. FLEMING et al.
### No. 5975.

Court of Civil Appeals of Texas. Texarkana.
Dec. 1, 1942.

Rehearing Denied Dec. 17, 1942.

W. H. Sanford, Conan Cantwell, Goggans & Ritchie, Bromberg, Leftwich, Gowan & Schmucker, H. L. Bromberg, Jr., and J. W. Crosland, Jr., all of Dallas, and J. K. Brim and T. J. Ramey, both of Sulphur Springs, for appellants.

Tom Williams and J. C. Jackson, Jr., both of Sulphur Springs, J. V. Fleming, Clower & Wilson, and Potter & Bezoni, all of Tyler, B. J. Wynne, of Wills Point, Turner, Rodgers & Winn and W. H. Rogers, Jr., all of Dallas, and Grover Sellers, of Austin, for appellees.

WILLIAMS, Justice.

J. V. Fleming, an appellee, filed this suit in the nature of a trespass to try title asserting title to a 116/256 interest in the ⅛

royalty under a 175-acre tract in the J. A. Croft survey in Hopkins County. He named as defendants R. H. Waller, E. L. Ashcroft, D. S. Hager, the Talco Pipe Line Company, American Liberty Pipe Line Company, A. A. Buchanan, L. A. Douglass, R. F. Schoolfield, W. W. Kelley, F. M. Frasher, Kelly Cox and J. W. Crossland. The last seven named will be referred to as the Buchanan-Douglass interests. R. H. Waller, the other appellee here, in his cross-action against above-named defendants asserted title to a 3/64 interest in the royalty. Ashcroft and Hager asserted title jointly to a ½ interest and the Buchanan-Douglass interests asserted title jointly to a 6/32 interest.

In the judgment entered, Fleming recovered of Ashcroft, Hager and the Buchanan-Douglass interests a .4261771 interest of the ⅛ royalty; Waller recovered of the same defendants a 3/64 of the ⅛ royalty; Ashcroft and Hager were decreed to be the joint owners of 58/256 interest in the ⅛ royalty; and the Buchanan-Douglass interests were divested of any interest in the royalty. Fleming and Waller also recovered against above defendants including the Talco Pipe Line Company the value of royalty oil produced and sold. Ashcroft, Hager, Talco Pipe Line Company and the Buchanan-Douglass interests have appealed.

On February 19, 1924, Mrs. Susan B. Pierce, a feme sole, executed and delivered to R. M. Loving a deed which purported to convey to him ½ the ⅛ royalty under the tract. Title to this ½ royalty interest, as a result of assignments, rested in December 1926 in Fleming to a 29/64 and in Waller to a 3/64. March 22, 1933, Mrs. Pierce executed and delivered to Buchanan and Douglass deeds which conveyed to them jointly a 6/32 of the ⅛ royalty, now claimed by the Buchanan-Douglass interests. February 10, 1936, she executed to Ashcroft and Hager a deed which purports to convey to them jointly ½ the ⅛ royalty. In February 1937 Mrs. Beulah Guy filed suit and asserted title to ½ interest in this and other lands. See Guy v. Jones, Tex.Civ.App., 132 S.W.2d 490. After filing suit, she, joined by her husband and others, executed and delivered to plaintiff Fleming on August 8, 1937, a deed which purports to convey to him 70/256 of the ⅛ royalty, and which in the instant trial was decreed to have been executed in

lieu of and in ratification of a royalty deed executed by the same grantors to Fleming on June 2, 1937. On July 17, 1937, Mrs. Guy, joined by her husband, executed an instrument which purports to ratify and confirm the conveyance made by Mrs. Pierce on February 10, 1936, to Ashcroft and Hager. This same instrument also purports to sell and convey to Ashcroft and Hager ½ the ⅛ royalty (the intent being to place title to ½ only of the ⅛ royalty in Ashcroft and Hager). Prior to the filing of the instant suit, Fleming had sold off interests aggregating .30038 of the ⅛ royalty. This has also been ratified and confirmed by Mrs. Guy and title to which in Fleming's assignees was recognized by all litigants.

Such portions of the Loving deed material to the discussion to follow read:

"The State of Texas
"County of Hopkins

"That Susan B. Pierce, a feme sole, of the County of Hopkins ... has and by these presents does grant, bargain, sell, convey, set over and assign and deliver unto R. M. Loving, the following, to-wit: One-half interest in and to all of the oil, gas, in and under, and that may be produced from the following described lands, ... to-wit: (Here follows description of several tracts including the land in controversy).

*"It is understood that the sale of this royalty is for a period of fifteen years from February 19th, 1924, under the terms and provisions of oil and gas lease heretofore given by grantor herein as to the production of oil and gas, and at the expiration of said fifteen years the title to the minerals conveyed herein is to revert, without further notice, to grantor herein.* That the grantor herein is to receive all of the money paid for the lease executed on the above described land and premises, and the grantee's interest is confined and restricted to a production of oil and gas found on said premises above described; together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil and gas and removing the same therefrom.

"And said above described lands being now under an oil and gas lease originally executed in favor of Leon F. Russ, and now held by ——— it is understood and agreed that this sale is made subject to said lease,

but covers and includes one-half of all the oil and gas royalty of said lease.

"It Is Agreed and understood that none of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said R. M. Loving, and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event, the royalty only on said land, for oil and gas privileges shall be owned jointly by R. M. Loving and others and grantor, each owning one-half interest in all royalty oil & gas in and upon said land.

"This sale is made for and in consideration of the sum of Three Thousand ($3000.-00) Dollars, cash in hand paid, the receipt of which is hereby acknowledged.

"To Have and To Hold, the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said R. M. Loving, *his heirs and assigns forever,* and I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the said property unto the said R. M. Loving, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof." (Italics ours.)

On February 4, 1924, two weeks prior to the execution of above conveyance, Mrs. Pierce executed and delivered to Leon F. Russ an oil and gas lease which covered the lands above mentioned and provided for a ⅛ royalty to be paid lessor. The lease further stipulated, *"It is agreed that this lease shall remain in force for a term of five years from its date and as long thereafter as oil or gas, or either of them is produced from said land by the lessee."* (Italics ours.)

No production was had under above lease, and it expired in February, 1929, under its own terms. In 1935 and 1936 Mrs. Pierce executed oil and gas leases which collectively covered the land involved. Production of oil was first obtained in January, 1937, and still continues. The production of oil was had under the 1935-1936 oil leases.

Under point 1, appellants in their joint brief assert that the court erred in holding that the title and rights granted by the Loving deed, above set out, did not, under the terms of said deed, terminate at the expiration of 15 years from its date.

Appellees contend that through the use of the phrase "under the terms and provisions of oil and gas lease heretofore given by grantor herein as to the production of oil and gas" following the 15 years limitation clause, it has the effect to read into the Loving deed, as a part of it, that portion and only that portion of the Russ oil lease reading "and as long thereafter as oil or gas is produced from said land." They take the position that oil having been produced on the tract in 1937 within the 15-year primary term of the Loving deed, thereby said primary term is extended so long as oil is being so produced. This theory would make the Loving deed read, in effect, that the sale of this royalty is for a period of 15 years from February 19, 1924, and as long thereafter as oil or gas is produced from said land. That provision in the Russ oil lease which stipulates that the grant shall remain in force "as long thereafter as oil is produced from said land by the lessee" (or his assigns) was conditioned and to become operative only in the event the lessee or his assigns should be producing oil from the tract at the expiration of the 5-year primary term of the grant. If all the terms of the life of the Russ lease grant be made a part of the Loving grant, it affords no support in extending the Loving grant beyond its 15-year primary term. The event upon which the 5-year primary term in the Russ lease would be extended never became effectual or operative. No production of oil was had under the Russ lease, and the grant thereunder had terminated in 1929. Thuss on Oil & Gas, p. 101, § 73.

If only that portion of the terms of the Russ lease insisted on by appellees be read into the terms of the life of the Loving grant, any reason advanced for such act would likewise apply for the incorporation of its conditional provision above set out. The primary term clause in the Russ lease and the conditional provision for its extension are not in conflict. Neither is ambiguous. Both clauses are legal and of equal dignity. We know of no rule of construction which would authorize the rejection and elimination of above conditional provision if the terms of the life of the Russ oil lease is read into the terms of the life of the Loving royalty grant. Under above observations, the court would be without legal grounds to write into this instrument what the parties could have but had not themselves written therein. This is not a suit for reformation.

When the rules of construction are applied to the language used and the provisions employed in the Loving deed, it is apparent that this was a conveyance of royalty for 15 years, and no longer, and that the reference to an existing oil and gas lease was to make it clear that the Loving deed was subject to the lease. If there could be any doubt in this respect, it is eliminated by the language in the Loving deed, namely, "and at the expiration of said 15 years the title to the minerals herein is to revert, without further notice, to grantor herein." "The intention must be gathered primarily from a fair consideration of the whole instrument, and the language employed therein, and the construction given it should harmonize with the terms of the deed, including its scope, subject-matter, and purpose." Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 1087, 85 A.L.R. 391; Associated Oil Co. v. Hart, Tex.Com.App., 277 S.W. 1043; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442; Anderson-Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217; Pitts v. Camp County, 120 Tex. 558, 39 S.W.2d 608; 26 C.J.S., Deeds, p. 328, § 84. "This rule [of construction] does not demand that every part of the deed shall be treated as of equal weight in the solution of every question that may arise. 'The habendum may be entirely rejected if repugnant to the other clauses of the conveyance.'" Moore v. City of Waco, 85 Tex. 206, 20 S.W. 61, 63; Hopkins v. Hopkins, 103 Tex. 15, 122 S.W. 15; Countiss v. Baldwin, Tex.Civ.App., 151 S.W.2d 235; 26 C.J.S., Deeds, p. 429, § 128; Summers, Oil and Gas, Perm.Ed., vol. 1, § 134, p. 327.

It is to be observed that Waller's suit and his recovery of 3/64 of the ⅛ royalty was predicated upon such title as he acquired under the Loving deed; that Fleming's suit was predicated upon his claim to 29/64 of ⅛ royalty under the Loving deed plus a 70/256 (.2734375) of ⅛ royalty under the Beulah Guy deed; and that the .30038 of ⅛ royalty sold and assigned by Fleming exceeded the interest he acquired under the Guy deed. The foregoing calculation, with the conclusion reached that the royalty grant under the Loving deed terminated on February 19, 1939, requires the judgment to be reversed and rendered for appellants in so far as any recovery of title to any royalty subsequent to February 19, 1939, by appellees against the appellants is concerned.

As to the sums which represented the value of royalty oil produced from the tract prior to February 19, 1939, and included in the money judgment awarded appellees against appellants, the latter, among various defenses, urged that they were entitled to protection as innocent purchasers for value. In Point 2 they assert that the court erred in holding that appellants were not entitled to such protection as innocent purchasers as against the claims asserted by plaintiff under Beulah Guy. Under a deed, duly recorded, the tract was in 1911 conveyed to J. K. Pierce. It was the community property of J. K. Pierce, who died intestate in 1918, and Susan B. Pierce, his wife, who died testate February 2, 1937. No children were born to them. The history of Beulah Guy, nee Brannon, and the basis for her claim to ½ interest in the tract is disclosed in the reported case Guy v. Jones, supra. In the instant trial, the jury found that (1) Mr. Brannon (her father) relinquished his rights to his daughter in consideration of an agreement by J. K. and Susan Pierce to adopt Beulah as their legal heir; (2) that J. K. Pierce and wife took Beulah from her father under an agreement to adopt her; (3) that the Pierces held her out to the public as their adopted daughter; (4) that they represented to Beulah that she was their adopted daughter; (5) that Beulah believed such representations; and (6) that she performed the usual duties of a child to J. K. and Susan Pierce.

No issue of innocent purchaser was requested and none was submitted to the jury. The trial court found that neither Ashcroft, Hager, Douglass or Buchanan, at the time of their respective royalty purchases, had any knowledge of any agreement by J. K. Pierce or his wife to adopt Beulah Guy, nor any knowledge that she had or claimed any interest in the land in controversy, nor any knowledge of any facts sufficient to put them or either of them upon inquiry as to any such interest or claim of Beulah Guy, nor as to any such agreement to adopt her. The court further found that the evidence fails to disclose that any of the defendants holding or claiming title under Mrs. Pierce ever made inquiry as to whether or not J. K. Pierce, deceased, left any heirs other than his surviving wife. No attack is made by any one on the sufficiency of the evidence to support any of the court's or jury's findings. It is without dispute that each of defendants paid a valuable consideration

in the purchases of their respective royalty interests. It is not contended that any of the royalty herein mentioned was conveyed by Mrs. Pierce to pay community debts.

Appellees contend that the jury's findings established Beulah Guy's status as that of an adopted child with the same right of inheritance as if she had been born to J. K. and Susan Pierce; and that as J. K. Pierce held the legal title to the tract, Mrs. Guy acquired the same title (citing text in 15 T.J. p. 172, §§ 26 and 27) to the extent of ½ interest; and therefore appellants upon their respective purchases from Mrs. Pierce were charged with constructive notice of such legal title to ½ interest in Beulah Guy.

Article 2578, R.C.S. provides: "Upon the dissolution of the marriage relation by death, all property belonging to the community estate of the husband and wife shall go to the survivor, if there be no child * * * but if there be a child * * * of the deceased * * * then the survivor shall be entitled to one-half of said property, and the other half shall pass to such child * * *." No child survived J. K. Pierce. In Mayor v. Breeding, Tex. Civ.App., 24 S.W.2d 542, 545, writ refused, where the husband in whom the legal record paper title stood died, leaving a surviving wife but no child or children, it was held that "the prima facie legal title to the entire [community] property passed to the surviving wife" by virtue of Article 2578, supra. See, also, Marshburn v. Stewart, 113 Tex. 507, 254 S.W. 942. The only statute which provided for descent of community property (the wife surviving) to any person other than a child, applicable to the time here involved, was Article 43, R.C.S. of 1925 (now repealed Vernon's Ann.Civ.St. art. 43) which provided that, "When such statement [the statement required by Article 42 of R.C.S. of 1925,] is so recorded it shall entitle any child so adopted to all the rights and privileges, both in law and equity, of a legal heir of the adoptive parent."

In Mrs. Guy's suit against the executors and devisees of Mrs. Pierce, the former made no claim that the provisions of Article 42 or 43 had been complied with, and no such claim is made now. The Supreme Court, Jones v. Guy, 135 Tex. 398, 143 S. W.2d 906, affirming this court, held that the facts there as here established by the jury's verdict would give rise to an equitable estoppel, whereby Mr. and Mrs. Pierce and their privies would be estopped to deny to Mrs. Guy the status of an adopted child; that her rights were equitable, requiring the application of equitable principles and remedies for their enforcement. No question of innocent purchaser was before the court in Jones v. Guy, supra, the defendants there being devisees under the will of Mrs. Pierce to whom the word "privies" there used had reference.

 Paraphrasing the conclusions as stated in Marshburn v. Stewart, supra, and Mayor v. Breeding, supra, both applicable to this record, we conclude that the law having invested Mrs. Pierce, as survivor of the community, with the apparent legal title in fee simple to this land, and such apparent title having passed to appellants for a valuable consideration, that before appellees can defeat the same, the latter must show that at the time appellants purchased their respective interests they had notice of the equitable rights of Mrs. Guy, or had notice of facts sufficient to put appellants upon inquiry, and that such inquiry, pursued with reasonable diligence, would have necessarily discovered the real facts upon which Mrs. Guy's claim to an interest in the land involved in this suit is predicated. 43 T.J. p. 621, §§ 361 to 366. As stated in Edwards v. Brown, 68 Tex. 329, 4 S.W. 380, "The policy of our laws is to protect purchasers against secret titles, whether they be legal or equitable." See, also, Patty v. Middleton, 82 Tex. 586, 17 S.W. 909. Constructive notice not having been visited upon appellants and the court having found that appellants had no knowledge of any fact sufficient to put them upon inquiry, appellants are entitled to protection as innocent purchasers against the claim asserted by plaintiff under Beulah Guy.

An interest of .0121147 of ⅛ royalty was awarded Waller which is recited in the judgment to be "an interest to which he would be entitled in any event and is no part of the interest in the royalty claimed by Ashcroft, Hager or the Buchanan-Douglass interests." The briefs do not disclose, and we make no effort to ascertain from the voluminous record of sales and assignments here, the basis of the award. No complaint is made of this interest decreed to Waller. The disposition made in the judgment as to other mineral interests and

other parties not above mentioned will not be set out, not being complained of in any brief.

That part of the judgment which awards Fleming a recovery against Ashcroft, Hager, the Buchanan-Douglass interests, the American Liberty Pipe Line Company, or the Talco Pipe Line Company is reversed and judgment here rendered that he take nothing by his suit; that part of the judgment which awards Waller a recovery against any of above named defendants is reversed and judgment is here rendered that he be decreed a .0121147 of ⅛ royalty interest in the tract together with recovery of such per cent of the oil runs now held in suspense by the Talco Pipe Line Company; and that part of the judgment which limited Ashcroft and Hager jointly a limited recovery and which denied the Buchanan-Douglass interests any recovery is reversed and judgment here rendered that Ashcroft and Hager, jointly, be decreed to be the owners of ½ of the ⅛ royalty, and that the Buchanan-Douglass interests be decreed to be the owners of their respective interests as respectively prayed for. In all other respects the judgment is affirmed.

Reversed and rendered in part and affirmed in part.